[No. 12776. Department One. November 29, 1915.]

E. W. CUTLER et al., Appellants, v. WILLIAM N. KELLER et al., Respondents.[1]

FIXTURES — REMOVAL — RIGHTS OF MORTGAGOR. Structures of a permanent character erected upon mortgaged premises by the owner of the fee are presumptively for the purpose of improving the land and become subject to the mortgage without right of removal.

SAME. The strict rule against the removal of improvements affixed to the real estate applies as between mortgagor and mortgagee, even if the additions were made after execution of the mortgage; and notwithstanding a mortgage constitutes only a lien in this state.

MECHANICS' LIENS—MORTGAGES—PRIORITY—STATUTES. A mechanics' lien is inferior to the lien of a prior real estate mortgage recorded prior to the commencement of the furnishing of the labor or material, under Rem. & Bal. Code, § 1132, providing that mechanics' liens are preferred to any mortgage which may attach subsequently to the time of the commencement of the work and to those that attached previously and were not filed or recorded so as to create constructive notice and of which the lien claimant had no notice.

SAME—LIEN ON BUILDING — REMOVAL — STATUTES. Rem. & Bal. Code, § 1146, providing for the removal and sale from the land of property subject to a mechanics' lien, in case the title or interest in the land cannot be subjected to a lien, has application only to cases where the work or materials were furnished at the instance of a party owning less than the fee, and not to liens placed by the owner of the fee on premises subject to prior mortgages.

FIXTURES — BUILDINGS — REMOVAL — RIGHTS OF MORTGAGOR. The practicability of removing a small building from mortgaged premises is not alone sufficient to impress upon it the character of personal property.

[1]Reported in 153 Pac. 15.

MORTGAGES—FORECLOSURE — PRIORITIES — MECHANICS' LIENS — AT-
TORNEY'S FEES. Upon the foreclosure of a prior mortgage, the stipu-
lated attorney's fees are not to be postponed to subsequent mechanics'
liens for labor and materials in the construction of a house upon
the premises, on the theory that the fees arose subsequently to the
inception of the liens.

Appeal from a judgment of the superior court for Pierce
county, Easterday, J., entered September 15, 1914, upon
findings in favor of the defendants, in consolidated actions
to foreclose mechanics' and materialmen's liens, and to fore-
close mortgages, tried to the court. Affirmed.

*H. W. Lueders,* for appellants.

*John E. Gallagher,* for respondent.

ELLIS, J.—This is a consolidation of two separate actions
brought, respectively, to foreclose certain labor and ma-
terialmen's liens upon lots 17 and 18, in block 11, of Fletch-
er's Heights addition to the city of Tacoma, and to fore-
close certain mortgages upon the same property. The
dominant question is as to the order of priority of the sev-
eral liens and mortgages.

No statement of facts is presented. The following is the
substance of the court's findings: On July 7, 1910, D. P.
Lea and Leta M. Lea, husband and wife, being then the
owners of the lots in question, executed and delivered to
W. C. Bergstrom a mortgage thereon securing notes for the
sum of $900. This mortgage was recorded in the office of
the county auditor on July 9, 1910. On August 10, 1910,
Bergstrom assigned the notes and mortgage to William N.
Keller. This assignment was recorded on May 11, 1914.

On June 10, 1912, Lea and wife executed and delivered to
the Fidelity Trust Company a second mortgage on the same
premises to secure a note for $250. This mortgage was
recorded on July 29, 1912. Between December 10, 1912, and
December 24, 1912, E. W. Cutler and G. S. Graves, copart-
ners as Cutler & Graves, performed labor for Lea and wife

in the erection of a frame building on the lots, and on March 22, 1913, filed a laborer's lien on the building and lots for $78.65. Between December 10, 1912, and December 18, 1912, the Sixth Avenue Lumber & Fuel Company furnished building material to Lea and wife for the construction of the building, and on March 15, 1913, filed a materialman's lien on the premises for $130.65.

The building in question was intended for a moving picture studio. It was set upon posts and was capable of removal without injury to the land or other buildings thereon. There was no finding that the building was a mere impermanent shed or temporary structure, or that, at the time of its erection, there was any intention on the owner's part to remove it, or any contract with the lien claimants or any one else that it might be removed.

The court further found that there is due to William N. Keller upon his notes and mortgage from Lea and wife $1,078.19, and an attorney's fee of $107.80; that there is due the Fidelity Trust Company upon its note and mortgage $269.50, and an attorney's fee of $26.95; that there is due Cutler & Graves $86.30, and $30 attorney's fee; and that there is due the Sixth Avenue Lumber & Fuel Company $145.19, and an attorney's fee of $40; that the liens of the several mortgagees and lien claimants for the above amounts, respectively, are entitled to rank in the following order: First, that of William N. Keller; second, that of Fidelity Trust Company; third, that of Cutler & Graves; and fourth, that of the Sixth Avenue Lumber & Fuel Company.

Upon appropriate conclusions of law, the court entered a decree and order for sale of the above described premises, and an application of the proceeds in accordance with these findings. The lien claimants, Cutler & Graves and the Fuel Company, have appealed.

Appellants contend that they should have been accorded a first and second lien upon the building for the labor and ma-

terials furnished, with the right to remove it from the lots. It is argued that, since in this state a mortgage is a lien, and not a conveyance with a defeasance, the mortgagors had the right to construct on the lots additional buildings which were not in contemplation of the parties when the mortgage was given, and to make a contract with third persons giving a lien on the building with the right of removal, since this can be done without injury to the land. It may be assumed, without so deciding, that had there been any such contract with the appellants, made by the mortgagors with the knowledge and acquiescence of the mortgagees, the asserted right of lien and removal would exist. Such, however, is not the case before us.

As a general rule, structures of a permanent character erected on land by the owner in fee simple are presumed to be built for the purpose of improving the land and to become a part of the realty, in the absence of evidence of a contemporaneous contrary intention.

"Buildings, unless of a very light construction, and fences, are usually regarded as placed on the land for its permanent improvement, and so to be considered as a part thereof." 1 Tiffany, Modern Law of Real Property, p. 541, § 234.

"*Prima facie,* all buildings, and especially dwelling houses, belong to the owner of the land on which they stand as part of the realty; and the burden of proof is upon those who claim that they are personal property to show that they retain that character." Ewell, Fixtures (2d ed.), p. 102.

See, also, *Lipsky v. Borgmann,* 52 Wis. 256, 9 N. W. 158, 38 Am. Rep. 735; *Indianapolis, D. & W. R. Co. v. First Nat. Bank of Indianapolis,* 134 Ind. 127, 33 N. E. 679; *Doscher v. Blackiston,* 7 Ore. 143; *Chatterton v. Saul,* 16 Ill. 149.

When buildings are placed by the absolute owner of land on which they rest, their quality of removability without injury to the freehold is not usually a factor of controlling importance as between mortgagor and mortgagee, *Rowland v. Sworts,* 17 N. Y. Supp. 399, though it may be as between landlord and tenant or licensor and licensee.

"Fully as much importance is attached to the relation of the party making the annexation, to the land and the permanency and habitual character of the annexation, as is paid to the manner or form of the fastening. When the absolute owner of land, for the better use of his land, erects property upon, or attaches it to the freehold, it will go to his heir, or pass by deed, to his grantee, and the same general rule applies between mortgagor and mortgagee, but as between landlord and tenant and licensor and licensee, this rule is relaxed, with a view to the encouragement of mechanical and agricultural pursuits." Tiedeman, Real Property (3d ed.), p. 23, § 17.

Though the rule has become much relaxed as between landlord and tenant, especially as to the things affixed for the purposes of trade, manufacture or agriculture, the same strict rule which applies as between heirs and executors applies as between vendor and vendee, and mortgagor and mortgagee, unless excepted in express terms from the conveyance or mortgage. *Sands v. Pfeiffer*, 10 Cal. 258. This is true though the additions were made after the mortgage was executed.

"The rule is familiar, that all improvements placed on real estate by the owner when it is incumbered, inures to the security or benefit of the holder of the incumbrance. They can not be separated, when they savor of the realty, from the land, nor can their value be claimed as against the lien, but are held to be subject to it." *Baird v. Jackson*, 98 Ill. 78.

See, also, *Wood v. Whelen*, 93 Ill. 153; *Woodham v. First Nat. Bank of Crookston*, 48 Minn. 67, 50 N. W. 1015, 31 Am. St. 622; *Leland v. Gassett*, 17 Vt. 403.

It seems to us illogical to assume that this rule is relaxed by reason of the fact that a mortgage in this state is a lien and not a conveyance with a defeasance. It is a lien upon the real estate. Things becoming in law a part of the real estate are, therefore, essentially subject to the lien of the mortgage. The essence of the contract can hardly be changed by the mere form which the contract takes.

"An equitable mortgagee has the same right to hold fixtures as part of his security that a legal mortgagee has." 1 Jones, Mortgages (6th ed.), § 437.

As before stated, the evidence is not before us. There was no finding that the mortgages excepted from their operation buildings of any kind subsequently to be erected on the lots. Nor is there any finding that the mortgagors, Lea and wife, ever agreed with the appellants here that the building should not become part of the realty but should be considered personal property. These appellants must, therefore, rest solely upon their rights as statutory lien claimants. The statute, Rem. & Bal. Code, § 1132, provides:

"The liens created by this chapter are preferred to any lien, mortgage or other encumbrance which may attach subsequently to the time of the commencement of the performance of the labor, or the furnishing of the materials for which the right of lien is given by this chapter, and are also preferred to any lien, mortgage or other encumbrance which may have attached previously to that time, and which was not filed or recorded so as to create constructive notice of the same prior to that time, and of which the lien claimant had no notice."

The language of this section carries the necessary implication that the lien accorded to mechanics and materialmen is subject to the lien of a prior mortgage on the real estate recorded prior to the commencement of the performance of the labor or the furnishing of the material, or of which the lien claimant had notice. We have uniformly so construed it. *Home Sav. & Loan Ass'n v. Burton,* 20 Wash. 688, 56 Pac. 940; *Baker v. Sinclaire,* 22 Wash. 462, 61 Pac. 170; *Fitch v. Applegate,* 24 Wash. 25, 64 Pac. 147; *Averill Mach. Co. v. Allbritton,* 51 Wash. 30, 97 Pac. 1082.

The appellants urge that, under Rem. & Bal. Code, § 1146 (P. C. 309 § 87), providing that if the title or interest in land upon which the property subject to a lien is situated cannot be subjected to a lien, the court may order the sale and removal from the land of the property subject to the

lien to satisfy the lien, the court should have ordered a sale of the building to satisfy their liens. That section has no application to a case such as here presented. It is clearly intended to apply to cases in which the work was performed or materials furnished at the instance of a person owning less than the fee in the real estate. *Bell v. Swalwell Land, Loan & Trust Co.*, 20 Wash. 602, 56 Pac. 401.

The decisions of this court, cited by the appellants, are all wide of the case here on the facts. *Gasaway v. Thomas*, 56 Wash. 77, 105 Pac. 168, involved mining machinery used for prospecting, belonging to the purchaser of a mine under a contract subsequently forfeited. *Philadelphia Mtg. & Trust Co. v. Miller*, 20 Wash. 607, 56 Pac. 382, 72 Am. St. 138, 44 L. R. A. 559, involved mantles of a kind carried by dealers adaptive to any kind of house, hot water heaters and bath tubs, all readily detachable and removable. *Hall v. Law Guarantee & Trust Society*, 22 Wash. 305, 60 Pac. 643, 79 Am. St. 935, involved electric light fixtures and globes, a windmill, a hot water tank, curtains and screens. In *German Sav. & Loan Society v. Weber*, 16 Wash. 95, 47 Pac. 224, 38 L. R. A. 267, there was a special agreement that the things claimed by him should be regarded as personal property belonging to the materialmen until paid for. *Chase v. Tacoma Box Co.*, 11 Wash. 377, 39 Pac. 639, involved machinery and apparatus readily removable and not designed as a part of the buildings where used.

In the case here, the sole circumstance relied upon as giving the building the character of personal property is the practicability of its removal without injury to the freehold. This, in the absence of any agreement to that effect, is insufficient under the authorities to impress that character upon the building as in favor of the mortgagors. The lien claimants under the statute stand in no better position.

The appellants further contend that the lien of the mortgages, in so far as the provision for the recovery of attorney's fees is concerned, must be postponed to the liens for

labor and materials.   One case so holding is cited.   *Garrett v. Adams* (Tenn. Ch.), 39 S. W. 730.   This on the theory that the attorney's fees arose after the labor and materials were furnished.   We cannot adopt this view.   The lien for the fees is traceable to the mortgage alone.   It attached as a contingent right when the mortgage was given.   The same course of reasoning which would postpone the lien for the attorney's fees would logically have the same effect as to interest subsequently accruing, and would apply equally as between junior and senior mortgages.   The statute, to which alone the right of lien is referable, makes the lien subject to prior recorded mortgages and all that they are given to secure.

The findings of the trial court sustain the decree.   It is affirmed.

MORRIS, C. J., MOUNT, and CHADWICK, JJ., concur.