[No. 22204. *En Banc.* February 24, 1931.]

HALL & OLSWANG, COPARTNERS, *Plaintiff-Respondent*, v.
AETNA CASUALTY & SURETY COMPANY, *Defendant-
Respondent*, FARMERS STATE BANK OF
SUMNER, *Defendant-Appellant*.[1]

[1]Reported in 296 Pac. 162.

*Fred C. Dorsey* and *Hayden, Langhorne & Metzger,* for appellant.

*J. Speed Smith* and *Henry Elliott, Jr.,* for respondent.

PARKER, J.—This action was originally commenced in the superior court for King county by the plaintiffs, Hall and Olswang, copartners, as assignees of R. R. Musselman, seeking recovery against the defendants, Blackadder, a contractor, the Aetna Casualty & Surety Company as surety on his construction bond, and School District No. 25 of King county, for labor performed by Musselman in the construction of a building for the district. The claim of recovery against the contractor is rested upon his employment of Musselman; against the surety company upon its liability as surety upon the contractor's bond; and against the school district to subject the portion of the contract price owing by the school district to the payment of the assigned Musselman claim.

The surety company, by answer and cross-complaint, brought into the action all unpaid labor and material claimants; the surety company claiming the right to have the whole of the contract price owing by the school district subjected to the payment of such labor and material claims, which, in the aggregate, exceeded the amount owing by the school district, to the end that the surety company's liability upon its bond to such laborers and materialmen be accordingly lessened. The bank answered the surety company's cross-complaint, making claim, as assignee of the contractor, to the portion of the contract price owing by the district in excess of fifteen per cent of the contract price remaining in the hands of the district. The several claimants for labor and material also answered, setting up their separate claims, in substance, as set up in the complaint of the original plaintiffs, Hall and Olswang. The district answered, setting up the amount unpaid upon the contract, to wit, $4,857, making no claim of retaining any portion of the balance owing by it for the benefit of the labor and the material claimants, but claiming for itself $422 of the fund, to enable it to make good defects in the construction of the building.

A trial upon the merits in the superior court resulted in a decree awarding the $4,857 unpaid balance of the contract price in the hands of the district, as follows: $422 to be retained by the school district for the correction of defective construction of the building; $4,435 towards payment, *pro rata,* of judgments rendered in the decree, aggregating more than $5,000, in favor of the several labor and material claimants against the surety company, and denying recovery in any amount to the bank. From this disposition of the cause in the superior court, the bank has appealed to this court.

The principal, controlling facts, not seriously in dispute, we think, may be fairly summarized as follows: By a contract in writing, dated June 9, 1928, by and between School District No. 25 of King county and W. A. Blackadder as contractor, he agreed to construct for the district, including the furnishing of all labor and material therefor, a school house, according to plans and specifications which had been prepared therefor. The contract price, and the conditions of payment thereof, are recited in the contract as follows:

"Article 9. The said Owner agrees and binds itself for and in consideration of the erection of said Grade School Building as aforesaid, to pay unto the said Contractor the sum of Sixteen Thousand Two Hundred and No/100 Dollars ($16200). Payment on this contract or any additions thereto shall be made as the progress of the work may justify, less 15% which will be retained at all times until all the requirements of the plans, specifications and this contract are complied with and the work is completed and accepted: *Provided,* That at all times there shall be sufficient funds withheld to complete said building without using any part of said 15%. Final payment will be made as provided by Chapter 166 Law 1921, State of Washington.

"Article 10. *Provided* That the wages of artisans and laborers, and all those employed by or furnishing materials to the said Contractor shall have been paid and satisfied, so that they shall have no lien upon the buildings or works, and in case the said Contractor shall fail so to pay and satisfy all and every claim and demand against said Grade School Building as aforesaid, the said Owner may, if it deems proper so to do, retain from the moneys due and coming to said Contractor enough to pay and satisfy such claims and demands, it being, however, understood that nothing herein contained shall in any way be construed as impairing the right of the said Owner to hold the said Contractor or securities liable on his bond for any breach of the conditions of the same . . ."

Chapter 166, Laws of 1921, p. 657, is § 10320, Rem. Comp. Stat., hereinafter quoted.

Contemporaneous with the making of the contract, the contractor, as principal, and the surety company, as surety, executed and delivered to the school district a bond in the penal sum of $16,200, conditioned for the payment of labor and material claimants, as required by § 1159, Rem. Comp. Stat.

Shortly prior to the formal execution of the contract, but evidently after the contract had been awarded to the contractor by the school district authorities, he made application to the surety company for its execution, as surety, with him as principal, of the required bond; which application contained an indemnity and assignment agreement on the part of Blackadder, so far as need be here noticed, as follows:

"Third: That for the better protection of the said company, and as of the date hereof, the undersigned indemnitor (s) who are named as principal (s) in said bond do hereby assign, transfer and convey to the said Company all rights, title and interest in and to all the tools, plant, equipment and materials of every nature and description that the said principal (s) may now or hereafter have upon said work; . . . upon the following conditions, viz: This assignment shall be in full force and effect as of the date hereof: . . . (3) If the principal (s) fail to pay bills incurred on the work, when they become due and payable, . . .

"Fourth: That the said company, as surety on said bond, as of this date, shall be subrogated to all rights, privileges and properties of the principal (s) in said contract, and said principal (s) do hereby assign, transfer and convey to said company all the deferred payments and retained percentages arising out of this contract, and any and all monies and properties that may be due and payable to said principal (s) at the time of the happening of any of the occurrences mentioned in clauses one, two, three, four and five of the next preceding paragraph, or that may thereafter be-

come due and payable to said principal (s) on account of this contract or on account of extra work or materials supplied in connection therewith, hereby agreeing that all such monies and the proceeds of such payments and properties shall be the sole property of the said company, and to be by it credited upon any loss, damage, charge and expense sustained or incurred by it as above set forth under any bond of suretyship it has executed for the undersigned principal (s)."

The school district had no notice whatever of this indemnity and assignment agreement until long after the completion of the construction of the building, and its acceptance and occupancy by the district.

Soon after the contractor commenced the construction of the building, he executed and delivered to the Farmers State Bank the following assignment, which was, by the bank, presented to and filed with the clerk of the district, who was also a member of the board of directors of the district, who then endorsed thereon, as follows:

"Sumner, Washington
June 25, 1928

"School District No. 25
Thomas School, Kent, Washington
Attention Mr. Hardin, Clerk.

"FOR VALUE RECEIVED, I hereby assign to The Farmers State Bank, Sumner, Washington, all money due or that may become due the undersigned on a certain contract for the construction and completion of the new Thomas School building on a bid of $16,200.

"You are hereby authorized and instructed to pay to the said The Farmers State Bank, Sumner, Washington, all money or moneys due or that may become due on said contract until such time as you are instructed by The Farmers State Bank, Sumner, Washington, to cancel this assignment and agreement.

"You are hereby authorized and instructed to charge said sum or sums of money that you may remit to The Farmers State Bank, Sumner, Washington, to my account, and you are further directed to furnish

said The Farmers State Bank, Sumner, Washington, with any information that they may request regarding my account.

W. A. BLACKADDER.

"Accepted, this 26th of June, 1928, the aforegoing assignment made in duplicate.

"There are no prior claims or assignments filed or have been filed on this account up to this date.

School District No. 25, Kent,
King County, Washington
By B. F. HARDIN,
Clerk of Dist. 25."

The board of directors of the district, at its next meeting, held a short time thereafter, was notified by the clerk of the filing of this assignment with him, and of his action thereon. Thereafter, as the construction work progressed, the district caused payments of earned moneys under the contract to be made to the bank, in pursuance of this assignment, as follows: On August 3, 1928, $4,000; on August 17, 1928, $4,000, and on September 15, 1928, $3,000.

This assignment to the bank was made to secure advancements made by it to the contractor to aid him in financing this construction contract and two other similar construction contracts. The money so advanced, it may be conceded, was not traced as actually used in payment for labor performed, or material used, in the construction of the school building in question. There is still owing from the contractor to the bank, upon such advances, more than the amount of the unearned portion of the contract price, less fifteen per cent of the contract price.

On October 2, 1928, the contractor substantially completed the building, except as to certain minor deficiencies, when the board of directors of the district accepted the work, and entered into the occupancy of the building, subject to its claim of deductions for de-

ficiencies in construction, amounting in value to $422. During the period of thirty days immediately thereafter, there were duly presented and filed with the board of directors of the district, the labor and material claims here in question, aggregating more than $5,000, there being then unpaid on the contract price $4,857, as already noticed.

On November 8, 1928, which, it will be noticed, was after the acceptance and occupancy of the building by the district, and after the filing of all the labor and material claims in question, the surety company filed with the clerk of the district the contractor's application for the bond, embodying the indemnity and assignment agreement with the surety company. This was the first and only information ever received by the school district, or any of its officers, of that indemnity and assignment agreement.

We first inquire, What are the statutory rights of the labor and material claimants, apart from their contract rights, under the provisions of the construction contract? The bond executed by the contractor, as principal, and the surety company, as surety, was given and conditioned as required by Rem. Comp. Stat., § 1159, reading, in part, as follows:

"Whenever any board, council, commission, trustees or body acting for the state or any county or municipality or any public body shall contract with any person or corporation to do any work for the state, county or municipality, or other public body, city, town or district, such board, council, commission, trustees or body shall require the person or persons with whom such contract is made to make, execute and deliver to such board, council, commission, trustees or body a good and sufficient bond, with two or more sureties, or with a surety company as surety, conditioned that such person or persons shall faithfully perform all the provisions of such contract and pay all laborers, mechanics and sub-contractors and material-

men, and all persons who shall supply such person or persons, or subcontractors, with provisions and supplies for the carrying on of such work, . . ."

Section 1161, a part of the same statute, reads, in part, as follows:

"All such persons mentioned in said section 1159 shall have a right of action in his, her, or their own name or names on such bond for work done by such laborers or mechanics, and for materials furnished or provisions and goods supplied and furnished in the prosecution of such work, or the making of such improvements; *Provided,* That such persons shall not have any right of action on such bond for any sum whatever unless within thirty (30) days from and after the completion of the contract with an acceptance of the work by the affirmative action of the board, council, commission, trustees, officer, or body acting for the state, county or municipality, or other public body, city, town or district, the laborer, mechanic or subcontractor, or materialman, or person claiming to have supplied materials, provisions or goods for the prosecution of such work, or the making of such improvement, shall present to and file with such board, council, commission, trustees or body acting for the state, county or municipality, or other public body, city, town or district, a notice in writing in substance as follows: . . . [Here follows form of notice]"

These sections have been the law since long prior to the enactment of chapter 166, Laws of 1921, p. 657, § 1 (§ 10320, Rem. Comp. Stat.) of which reads as follows:

"That contracts for public improvements or work by the state, or any county, city, town, district, board, or other public body, shall provide, and there shall be reserved from the moneys earned by the contractor on estimates during the progress of the improvement or work, a sum equal to fifteen per cent. (15%) of such estimates, said sum to be retained by the state, county, city, town, district, board, or other public body, as a trust fund for the protection and payment of any person or persons, mechanic, sub-contractor or

materialman who shall perform any labor upon such contract or the doing of said work, and all persons who shall supply such person or persons or sub-contractors with provisions and supplies for the carrying on of such work. Said fund shall be retained for a period of thirty (30) days following the final acceptance of said improvement or work as completed, and every person performing labor or furnishing supplies towards the completion of said improvement or work shall have a lien upon said fund so reserved, provided such notice of the lien of such claimant shall be given in the manner and within the time provided in section 1161 of this Code . . ."

It seems plain that §§ 1159 and 1161 were enacted and have remained the law, in recognition of the law that public property has never been subject to mechanics' or materialmen's liens under our general mechanics' and materialmen's lien statutes. *Maxon v. School District No. 34,* 5 Wash. 142, 31 Pac. 462, 32 Pac. 110; *Clough v. Spokane,* 7 Wash. 279, 34 Pac. 934; *Gilmore v. Westerman,* 13 Wash. 390, 43 Pac. 345; *National Surety Co. v. Bratnober Lumber Co.,* 67 Wash. 601, 122 Pac. 337; *Western Hardware & Metal Co. v. Maryland Casualty Co.,* 105 Wash. 54, 177 Pac. 703, 181 Pac. 700.

The almost universally accepted rule is that general mechanics' and materialmen's lien statutes, in the absence of express words therein, subjecting public property to such liens, do not subject public property to such liens. See notes in 35 L. R. A. 141, 20 L. R. A. (N. S.) 261 and 41 L. R. A. (N. S.) 315. We are prompted to make this observation, because of the provision of the building contract, above quoted, which seems to suggest possible lien rights against the building for labor and material. It seems plain to us that we must put entirely out of our consideration all thought of the necessity of the district protecting its property against any possible lien rights.

■    What are the statutory rights of the labor and material claimants against the balance owing by the school district upon the construction contract? Section 10320, above quoted, we have seen, requires the retention of fifteen per cent of the moneys earned by the contractor for the protection of labor and material claimants. This is the only statutory requirement touching the retention of any portion of moneys earned by the contractor; so that it is plain that labor and material claimants have no statutory lien rights against moneys earned by the contractor, other than against the fifteen per cent thereof so required to be retained. This, plainly, is but a protection to the labor and material claimants, in addition to the bond required by § 1159, above quoted. So, we conclude that the only statutory rights of labor and material claimants to the contractor's earnings under the contract, are against the statutory fifteen per cent retention of such earnings.

■    We next inquire, What contract rights have the labor and material claimants in the nature of liens upon the balance owing by the school district upon the construction contract in excess of the fifteen per cent required by the statute to be retained? Manifestly, we must look to the construction contract for any such rights of the labor and material claimants. As we read the contract, its language coming nearest to supporting any such lien rights, is found in the above quoted portions of articles 9 and 10.

The contract provision permitting the district to at all times withhold sufficient funds to complete the building, in addition to its retaining of the statutory fifteen per cent, is manifestly for the exclusive benefit of the district, and gives no right to the labor and material claimants. The contract provision for final payment, as provided by chapter 166, Laws of 1921

(§ 10320, Rem. Comp. Stat.) manifestly can mean nothing more than that fifteen per cent of the contractor's earnings under the contract shall be retained by the district for the benefit of labor and material claimants.

Clearly, this is not an agreement on the part of the district to retain any more of the contractor's earnings for the benefit of such claimants. The contract provision that the district, if it deems proper, may retain, in addition to the statutory fifteen per cent of the earnings, enough to satisfy claims and demands of labor and material claimants, manifestly is a mere privilege on the part of the district to make such retention for the benefit of labor and material claimants or not, as it may see fit.

Now, did the district elect to retain more than fifteen per cent of the earnings under the contract for the benefit of labor and material claimants? Plainly, we think not. It is true that, when the building was accepted as substantially completed on October 2, 1928, the district had an unexpended balance of the contract price amounting to $4,857. Of this, of course, $2,430, being fifteen per cent of the $16,200 contract price, was for the benefit of labor and material claimants, as the statute required. But we do not find in this record any substantial evidence of the district manifesting any intent to retain any portion of the $4,857 in excess of the $2,430, for the benefit of labor and material claimants. The district did retain a considerable portion of this excess for the purpose of correcting defects in the construction of the building, but, otherwise, the district has made no claim to such excess for the benefit of anyone. It had no reason to make claim of retaining this excess for the benefit of labor and material claimants, since they were amply protected by the $16,200 bond of the surety company, and, in addition, by the

$2,430, fifteen per cent of the contract price. We think the mere fact that the excess above $2,430 happens to remain in the hands of the district, does not at all convincingly argue that such excess was retained by the district for the benefit of the labor and material claimants.

It seems plain to us that the balance of the contract price remaining in its hands, in excess of the $422 and the $2,430, must now be regarded as being held by the district as an impartial stakeholder, without its having decided, or in any manner evidencing its opinion, as to who is entitled to such excess, further than its prior recognition of the validity and effectiveness of the assignments made by the contractor to the bank.

What we have said so far, we think, has made it plain how this controversy has become one, in so far as practical results are concerned, only between the surety company and the bank; it being of primary concern, as between them, as to whether the surplus $2,005 of the $4,857, remaining in the hands of the district, shall be paid to one or the other of them; the labor and material claimants having no practical concern as to whether their judgments against the surety company shall be partially satisfied *pro rata* by the application of the $2,005, or wholly satisfied by the surety company apart from such application. Indeed, we have no briefs or argument here, except those of counsel for the surety company and the bank.

The surety company's claim of benefit of the surplus $2,005 is apparently rested upon the theory that it has the right of subrogation to the rights of the labor and material claimants to that portion of the fund, or, in the alternative, by virtue of the indemnity and assignment agreement given to it by the contractor, embodied in his application to it to become surety upon his bond. Of course, either of these the-

ories, if successfully maintained, would, in effect, save the surety company from loss in that amount under its suretyship obligation. The first of these theories, we think, we have already shown to be untenable, in view of our conclusion that the labor and material claimants have no right to the surplus $2,005, either under the statute or the construction contract, and, hence, there are no such rights which could pass to the surety company by way of subrogation.

Now comes a question of the respective claimed rights of the surety company and the bank, under their respective assignments to them by the contractor. The assignment to the bank by the contractor was made on June 25, 1928, soon after the commencement of the construction of the building. That assignment was for all moneys due and to become due him under the contract.

That assignment was made to enable him to finance his construction business generally, including the construction of the building in question. Large sums were advanced to him by the bank upon the faith of that assignment. He still owes the bank, on account of such advances, an amount exceeding the surplus $2,005. That assignment was, by the bank, promptly filed with the clerk of the school district, who was also a member of its board of directors, when he made endorsement thereon, purporting to be an acceptance of the assignment by the district. While the board of directors of the district did not formally, as a board, approve this act of its clerk, the board was soon thereafter, by the clerk, at its next meeting, advised of the making of the assignment and of his action thereon. Thereafter, as the construction of the building progressed, that assignment was honored by the district's causing payments to be made to the bank of earnings under the construction contract, aggregating $11,000.

The assignment to the surety company by the contractor was made in his application to it to become surety on his construction bond, at the time or just prior to its execution by him and the surety company. That assignment was conditioned on the occurrence of the contractor's defaulting in his contract, among other particulars, in failing to pay labor and material claimants, to the damage of the surety company.

That assignment was not brought to the knowledge of the district until after the substantial completion of the building, and its acceptance and occupancy by the district, and not until after the expiration of the thirty days following, within which labor and material claimants were required to file their claims with the clerk of the district, to enable them to sue the surety company upon the bond, or to sue to subject the statutory retained fifteen per cent of the earnings, under the construction contract, to the payment of their claims. No default of the contractor in payment of labor and material claimants was established until after the substantial completion of the building, and its acceptance and occupancy by the district.

These considerations, we think, call for the conclusion that the bank's right, under its assignment from the contractor, to the $2,005 in the hands of the district here in question, is superior to the surety company's right, under its assignment from the contractor, to that portion of the $4,857 remaining in the hands of the district.

Many of our prior decisions have been called to our attention, wherein have been considered claims made by labor and material claimants and claims made by sureties, under contracts and bonds for the construction of public buildings and works. To review and distinguish these decisions here would be, for the most part, to repeat in substance what has been said in

the four following ones. The general rule is well stated in *Beyer v. Zindorf,* 116 Wash. 199, 198 Pac. 977, as follows:

"This court has held that where the contract reserves a balance for the protection of materialmen and laborers, that such reserve balance is a trust fund, and the municipality making the contract is under obligation to hold it as such for their benefit. But this rule, as we take it, has been applied only in those cases where the contract unmistakably provides for such a fund."

*Pacific Coast Steel Co. v. Old Nat'l Bank,* 134 Wash. 457, 235 Pac. 947; *Fidelity & Deposit Co. of Maryland v. Auburn,* 150 Wash. 114, 272 Pac. 34; *Preston v. Forrestal Co.,* 150 Wash. 340, 272 Pac. 975.

Our conclusion here reached is in harmony with this view, and, we think, not out of harmony with any of our decisions, when read in the light of the contract provisions drawn in question in each particular case.

Some contention is made in behalf of the surety company, rested upon the fact that the moneys advanced by the bank to the contractor, have not been traced, as having actually been paid for labor or material in the construction of the building in question. Since we have arrived at the conclusion, as above indicated, that neither the labor and material claimants nor the surety company have any right whatever in the $2,005 here in question remaining in the hands of the district, we think it wholly immaterial as to whether or not the bank has traced its advances to the contractor, or any part thereof, as having been used in payment of labor or material going into the construction of the building in question.

We conclude that the decree of the superior court must be reversed, in so far as it denies to the Farmers State Bank recovery of the $2,005 in the hands of the

district; that being the amount in its hands earned upon the construction contract in excess of the $422 which the district itself is entitled to retain as its expense for correcting defects in construction of the building, and the $2,430 retained by the district in obedience to the fifteen per cent statutory requirement. The cause is remanded to the superior court with directions to correct its decree accordingly.

TOLMAN, C. J., MAIN, BEALS, MITCHELL, HOLCOMB, MILLARD, and BEELER, JJ., concur.

[1]Reported in 296 Pac. 148.