155 P.3d 952 (2007)
Charles C. HASELWOOD and Joanne L. Haselwood, husband and wife, Respondents,
v.
BREMERTON ICE ARENA, INC., a Washington corporation; Gregory S. Meakin and Deborah A. Meaqin, husband and wife; Mallory Enterprises, Inc. dba Abbey Carpets, a Washington corporation; Robison Mechanical, Inc., a Washington corporation; JPL Habitability, Inc., a Washington Corporation; Consolidated Electrical Distributors, Inc. dba Stusser Electric Co/Eagle Electric, a Washington corporation; Alaska Cascade Financial Services, Inc., assignee for Sound Glass Sales, Inc., a Washington corporation; Sullivan Heating & Cooling, Inc., a Washington corporation; Stirnco Steel Structures, Inc., a Washington corporation; Eagle Electric, Inc., a Washington corporation; Hanson Sign Company, Inc., a Washington Corporation; Stripe Rite Inc., a Washington corporation, Defendants,
RV Associates, Inc., a Washington corporation, Appellant,
City of Bremerton, Intervenor.
No. 33910-2-II.
Court of Appeals of Washington, Division 2.
April 10, 2007.
*954 William Henry Broughton, Broughton & Singleton Inc PS, Silverdale, WA, for Petitioner.
Charles M. Granoski Jr., Attorney at Law, Betzendorfer & Granoski, Tacoma, WA, David R. Riley, Weinstein & Riley, P.S., Seattle, WA, for Defendants.
Gary Theodore Chrey, Attorney at Law, Kenneth L. Kambich, Shiers Law Firm, Port Orchard, WA, Charles Kenneth Wiggins, Shelby R. Frost Lemmel, Kenneth Wendell Masters, Wiggins & Masters PLLC, Bainbridge Island, WA, for Respondents.
David P. Horton, Law Office of David P. Horton Inc. PS, Silverdale, WA, for Respondent Intervenor.
HOUGHTON, C.J.
¶1 In an action to foreclose on Chuck[1] and Joanne Haselwood's deed of trust, RV Associates, Inc., claimed that its mechanic's lien had priority because RV Associates furnished equipment to the job site before the Haselwoods recorded the deed of trust. RV Associates appeals from the trial court's judgment in favor of the Haselwoods. We agree with the trial court that the mechanic's lien cannot reach the City of Bremerton's real property, but we disagree that the lien is not entitled to priority under RCW 60.04.061. We also hold that the trial court did not abuse its discretion in denying RV Associates' motion for leave to amend its pleadings. We affirm in part, reverse in part, and remand.

FACTS

CONCESSION AGREEMENT
¶2 In April 1971, the U.S. Secretary of the Interior deeded 17.6 acres of land to the City for use as a public park and recreation area. The deed prohibited the City from leasing the land except to another government agency; however, the deed authorized the City to provide recreational facilities and services by entering into private concession agreements, subject to the approval of the Secretary of the Interior.
¶3 On August 9, 2002, the City entered into a concession agreement (the agreement) with Bremerton Ice Arena, Inc. (BIA) to construct and operate an indoor ice arena on the former federal lands. The agreement provided that BIA would not obtain fee ownership or any leasehold interest in the underlying realty, but it would own the improvements during the term of the agreement and would be entitled to possess them exclusively.
¶4 The BIA and the City designated BIA as the developer, solely responsible for obtaining financing, and referred to the project as a private works project. The agreement also noted that BIA had no authority to place liens on the City's interest in the premises. But the agreement designated the improvements and BIA's personal property on the premises as collateral and authorized BIA to pledge the collateral, as well as BIA's interest in the agreement, as security to obtain financing. Although affixed to the realty, the improvements would remain personal property and a lender realizing on the collateral would be entitled to remove the improvements, including the building facility.
¶5 The agreement was to be in effect for 10 years, with BIA retaining the option to renew the agreement for four consecutive 10-year periods. When the agreement terminated, ownership of the improvements would revert to the City. The agreement specified that it was expressly made for the *955 sole benefit of BIA and the City with no intention to create any third party rights.

FINANCING THE PROJECT
¶6 The Haselwoods agreed to provide financing for the project. In exchange for a $3,775,000 loan at 10 percent interest, BIA executed a promissory note, a commercial security agreement, and a deed of trust. The deed of trust purported to secure the loans by the real property at the ice arena location.
¶7 In addition, Gregory and Deborah Meakin, president and secretary, respectively, of BIA, executed a commercial guarantee and a hazardous substances certificate and indemnity. The Haselwoods recorded the deed of trust, and the hazardous substances certificate and indemnity on September 13, 2002.[2]

BUILDING THE PROJECT
¶8 BIA engaged The Wootan Group to serve as construction manager and general contractor for the ice arena project. RV Associates submitted a bid for clearing, excavating, grading and backfilling the site, as well as installing drainage, water and sewer lines, and a storm system, quoting a $441,716 base bid. The Wootan Group awarded RV Associates a private works contract dated August 17, 2002, which called for RV Associates to commence work on September 9, 2002.
¶9 RV Associates delivered equipment to the site on September 6. On September 9, The Wootan Group sent a notice to proceed and intent to award the contract to RV Associates based on its bid. RV Associates and BIA executed their contract on September 20.
¶10 After construction commenced, the Wootan Group made a number of changes to the plans and specifications affecting the cost of RV Associates' work. RV Associates claimed that BIA failed to pay $101,905.30 required by the agreement. Accordingly, RV Associates recorded a mechanic's lien against BIA and the ice arena on July 14, 2003.

FORECLOSURE PROCEEDINGS
¶11 BIA defaulted on the Haselwoods' promissory note. The Haselwoods filed a complaint for foreclosure against BIA, the Meakins, RV Associates, and numerous other creditors with interests in the ice arena. They sought a default judgment against BIA, a declaration that its security interest was prior to all other liens on the property, and a decree of foreclosure authorizing a sale of the property.
¶12 RV Associates filed an answer, counterclaim, and cross-claim, in which it claimed its mechanic's lien was superior to all other claims and liens on the property. RV Associates claimed priority under RCW 60.04.061 because it delivered equipment to the construction site on September 6, one week before the Haselwoods recorded the deed of trust. Accordingly, RV Associates sought a judgment against BIA for $101,905.30 plus 18 percent interest, costs and attorney fees, a declaration that its mechanic's lien was superior to all other claims on the property, and a foreclosure sale.
¶13 RV Associates moved for summary judgment against BIA, declaring its lien to be senior. The Haselwoods opposed the motion, arguing that the parties disputed the extent of BIA's obligation and that the property subject to the lien was public property and therefore could not have a lien attached to it. In response, RV Associates argued that the real property could have a lien attach because the City held the land in a proprietary capacity.
¶14 The trial court granted the motion for summary judgment in part, ruling that RV Associates' lien did not attach to the underlying realty or the concession agreement, but it "may attach to certain improvements to the facility commonly known as the Bremerton Ice Arena pursuant to further Order of the Court." Clerk's Papers (CP) at 609-10.
*956 ¶15 After moving for summary judgment but before the trial court issued its order, RV Associates moved for an order allowing it to remove its improvements. In the event the mechanic's lien did not attach to the underlying realty, RV Associates claimed it had statutory authority to remove its improvements to satisfy its lien under RCW 60.04.051. The City intervened in the action and opposed the motion to remove, arguing that removal could not be accomplished without injury to the underlying realty. The Haselwoods also opposed the motion. The trial court found that there were several contested factual issues and set a hearing.
¶16 The Haselwoods then sought summary judgment on the removal issue, arguing that removal is only available to a lien claimant who has priority and that RV Associates did not have priority because its lien was not "`upon any lot or parcel of land'" as RCW 60.04.051 required. CP at 1063. The trial court ultimately granted the Haselwoods' motion for summary judgment, deciding that removal is only available to a lien claimant who has priority and that RV Associates' lien was junior to the Haselwoods' deed of trust.
¶17 RV Associates then sought leave to file an amended counterclaim and cross-claim, adding additional allegations against the Haselwoods for breach of contract, promissory estoppel, negligence, unjust enrichment, and fraudulent inducement. RV Associates also wanted to add claims against the City as a third party beneficiary of the concession agreement and for its failing to require a bond and retainage. Both the Haselwoods and the City opposed the motion, arguing that amendment would be prejudicial and that the proposed amendments would be futile. The trial court denied RV Associates' motion for leave to amend.
¶18 The trial court entered a judgment and final decree of foreclosure in favor of the Haselwoods in September 2005. We granted RV Associates' motion for discretionary review.

ANALYSIS
¶19 RV Associates first contends that the trial court erred in granting summary judgment in favor of the Haselwoods because it misconstrued and misapplied the statute governing mechanic's liens.
¶20 We review an order granting summary judgment de novo, engaging in the same inquiry as the trial court, considering all the facts and reasonable inferences in the light most favorable to the nonmoving party. Simpson Tacoma Kraft Co. v. Dep't of Ecology, 119 Wash.2d 640, 646, 835 P.2d 1030 (1992). A court may grant summary judgment only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Simpson, 119 Wash.2d at 646, 835 P.2d 1030. We review legal questions de novo. Mannington Carpets, Inc. v. Hazelrigg, 94 Wash. App. 899, 904, 973 P.2d 1103 (1999).
¶21 The dispute centers on the parties' competing interpretations of the mechanic's lien statute. RV Associates claims that its lien reaches BIA's interest in the ice arena and the concession agreement, entitling it to remove its improvements even if the underlying real property is not subject to the lien.
¶22 Resolving this dispute requires us to interpret the mechanic's lien statute. We review statutory interpretation decisions de novo as questions of law. W. Telepage, Inc. v. City of Tacoma Dep't of Fin., 140 Wash.2d 599, 607, 998 P.2d 884 (2000). We must "`discern and implement the intent of the legislature.'" City of Spokane v. Spokane County, 158 Wash.2d 661, 673, 146 P.3d 893 (2006) (quoting City of Olympia v. Drebick, 156 Wash.2d 289, 295, 126 P.3d 802 (2006) (internal quotation marks omitted)). In doing so, we must give effect to a statute's meaning plain on its face. McGinnis v. State, 152 Wash.2d 639, 645, 99 P.3d 1240 (2004).
¶23 We derive the plain meaning from the relevant statute and any related statutes that disclose legislative intent about the questioned provision. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 11, 43 P.3d 4 (2002). "Statutory provisions must be read in their entirety and construed together, not piecemeal." ITT Rayonier, Inc. v. Dalman, 122 Wash.2d 801, 807, 863 P.2d 64 (1993). Legislative definitions set forth in the statute control but absent a statutory *957 definition, we may give a term its plain meaning by reference to a standard dictionary. Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles, 148 Wash.2d 224, 239, 59 P.3d 655 (2002). However, we should not read a statute literally if unlikely, absurd, or strained consequences result. Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996).
¶24 Where a statute has more than one reasonable meaning, it is ambiguous and we may use aids in construing it, including legislative history. Dep't of Ecology, 146 Wash.2d at 12, 43 P.3d 4. But a statute is not ambiguous simply because we can conceive different interpretations. Fraternal Order of Eagles, 148 Wash.2d at 239-40, 59 P.3d 655.
¶25 We strictly construe lien statutes because they derogate the common law. Willett v. Davis, 30 Wash.2d 622, 628-29, 193 P.2d 321 (1948). At the same time, RCW 60.04.900 instructs us to construe sections of the act liberally to provide security for all parties the provisions are intended to protect. See Lumberman's of Wash., Inc. v. Barnhardt, 89 Wash.App. 283, 286, 949 P.2d 382 (1997).

SCOPE OF RV ASSOCIATES' LIEN
¶26 First, characterizing BIA's interest in the ice arena as a leasehold, RV Associates argues that its lien attaches to BIA's interest in the improvements. The Haselwoods concede that RV Associates may have a lien on the improvements but then counter that the mechanic's lien statute provides no remedy here.
¶27 Under RCW 60.04.021, any person who furnishes labor, professional services, materials, or equipment to improve real property shall have a lien on the improvement for the contract price of the labor, services, materials, or equipment furnished at the instance of the owner or the owner's agent. Courts have construed prior versions of this statute to limit the attachment of the lien to the interest of the person who requests the labor or materials, or that person's agent. W.T. Watts, Inc. v. Sherrer, 89 Wash.2d 245, 248, 571 P.2d 203 (1977). RCW 60.04.051 codifies this common law limitation: "The lot, tract, or parcel of land which is improved is subject to a lien to the extent of the interest of the owner at whose instance, directly or through a common law or construction agent the labor, professional services, equipment, or materials were furnished."
¶28 The agreement with the City establishes the extent of BIA's interest in the ice arena. The concession agreement provided that the City would retain fee title to the underlying realty while BIA would own the improvements constructed on the realty as personal property for the term of the contract.[3]
¶29 Additionally, BIA and the City agreed that the construction of improvements on the property would be BIA's development project and that the City would not be an owner, partner, or joint venturer, or have any involvement in construction. BIA therefore did not act as the City's agent in constructing the ice arena.
¶30 Thus, under the terms of the agreement, BIA never had and never would acquire any interest in the underlying realty. The extent of BIA's interest was an ownership interest in the ice arena itself and all its incidental improvements as personal property. Accordingly, under RCW 60.04.051 and the concession agreement, RV Associates' lien could attach only to the improvements, not the underlying realty.
¶31 Nevertheless, RV Associates argues that its lien attaches to the real property underlying the ice arena because the City *958 owns the realty in a proprietary capacity. The Haselwoods respond that public property cannot be subject to a mechanic's lien. We agree with the Haselwoods.
¶32 Washington has never recognized an exception to the rule that public property is not subject to a mechanic's lien. See Hall & Olswang v. Aetna Cas. & Sur. Co., 161 Wash. 38, 47, 296 P. 162 (1931). In Hall, our Supreme Court observed that the legislature enacted statutes requiring a reserve fund on public works projects in order to compensate for the "almost universally accepted rule" that public property cannot be subject to a lien. 161 Wash. at 47, 296 P. 162. Washington courts continue to follow this precedent. See Hewson Constr., Inc. v. Reintree Corp., 101 Wash.2d 819, 828-29, 685 P.2d 1062 (1984); 3A Indus., Inc. v. Turner Constr. Co., 71 Wash.App. 407, 411, 869 P.2d 65 (1993); Farwest Steel Corp. v. Mainline Metal Works, Inc., 48 Wash.App. 719, 729, 741 P.2d 58 (1987).
¶33 RV Associates urges us to adopt the rule established by the Pennsylvania Supreme Court in American Seating Co. v. Philadelphia, 434 Pa. 370, 256 A.2d 599, 601 (1969), which held that public property can be subject to a lien if the municipality holds the property in a proprietary capacity. But the argument does not persuade us.[4]
¶34 Our Supreme Court has held, without exception, that public property is not subject to any lien. Hall, 161 Wash. 38, 296 P. 162. This rule lies in equity because the legislature has provided other forms of protection for individuals who contract with government entities, including the bond and retainage requirements for public works projects set forth in chapter 60.28 RCW. Contractors are sufficiently protected without carving out an exception to the rule that public property is immune to liens.
¶35 Accordingly, the extent of RV Associates' possible lien is limited to the improvements designated as BIA's personal property in the agreement and it does not reach the underlying real property the City owns.

PRIORITY
¶36 Next, RV Associates argues that its lien is senior to the Haselwoods' deed of trust under the "relation-back" statute, RCW 60.04.061, because it delivered equipment to the construction site on September 6, 2002, a week before the Haselwoods recorded the deed of trust. The Haselwoods counter that the mechanic's lien is junior because it did not attach to the publicly-owned real property and therefore the relation-back statute does not apply.
¶ 37 RCW 60.04.061 provides:
The claim of lien created by this chapter upon any lot or parcel of land shall be prior to any lien, mortgage, deed of trust, or other encumbrance which attached to the land after or was unrecorded at the time of commencement of labor or professional services or first delivery of materials or equipment by the lien claimant.
¶ 38 To support its interpretation of this section, the Haselwoods assert that chapter 60.04 RCW establishes two kinds of liens, one on improvements and one on real property, and that the statute providing priority as of the commencement of work only applies to liens on real property. But this interpretation does not convince us. The "claim of lien" referred to in the relation-back statute is singular, implying that chapter 60.04 RCW *959 creates only one kind of lien. Furthermore, when we read the mechanic's lien statute as a whole, it clearly establishes a single lien that attaches to the realty through the improvement.[5]
¶ 39 RCW 60.04.011(5) defines improvements as:
(a) Constructing, altering, repairing, remodeling, demolishing, clearing, grading, or filling in, to, of, or upon any real property or street or road in front of or adjoining the same; (b) planting of trees, vines, shrubs, plants, hedges, or lawns, or providing other landscaping materials on any real property; and (c) providing professional services upon any real property or in preparation for or in conjunction with the intended activities in (a) or (b) of this subsection.
The activities described in subsections (a) and (b) strongly suggest that the resulting improvements will be permanently affixed to, or part of, the realty. Generally, such permanent improvements become a part of the realty unless a contrary intention is expressed. See Pioneer Sand & Gravel Co. v. Hedlund, 178 Wash. 273, 277-78, 34 P.2d 878 (1934); Cutler v. Keller, 88 Wash. 334, 337, 153 P. 15 (1915). Thus, a lien on improvements will ordinarily reach the real property by attaching to a fixture, such as landscaping materials, or to the real property itself, as in the case of grading and filling.
¶40 Therefore, it is an unusual, although not unforeseen, circumstance when a lien attaches to improvements but fails to reach the real property. This situation generally occurs when the improvements are furnished at the instance of someone who owns less than the fee estate in the subject property. See Columbia Lumber Co. v. Bothell Dairy Farm, 174 Wash. 662, 664, 25 P.2d 1037 (1933); Gile Inv. Co. v. Fisher, 104 Wash. 613, 618, 177 P. 710 (1919); Cutler, 88 Wash. at 340, 153 P. 15. The legislature anticipated this problem and responded to it by enacting RCW 60.04.051, which permits a lienholder to remove its improvements if the lien does not attach to the real property.
¶ 41 Because the Haselwoods do not convincingly argue that chapter 60.04 RCW establishes separate liens for real property and for improvements, the question remains whether the legislature intended the priority provisions of RCW 60.04.061 to apply only to liens that reach the underlying real property. We conclude that it did not.
¶ 42 The Haselwoods emphasize that RCW 60.04.061 establishes priority for a claim of lien "upon any lot or parcel of land," concluding that the legislature restricted that section's relation-back provisions to liens on real property. That RV Associates' lien did not attach to the underlying realty does not mean that the lien is not on a lot or parcel of land. RV Associates performed work and installed materials on a parcel of the City's land. But for the agreement between BIA and the City that all the improvements would remain the personal property of BIA, the work RV Associates performed would have become a part of the realty and inured to the City's benefit. Even though the agreement designates the improvements as personal property, the ice arena is nonetheless permanently situated on the City's real property. Under these circumstances, where the improvement cannot reasonably be treated as anything but a permanent structure, it is reasonable to conclude that the lien is "upon a parcel of land," within the meaning of RCW 60.04.061, because the lien attached to a permanent improvement on the lot.
*960 ¶ 43 Furthermore, under the Haselwoods' interpretation, whether the mechanic's lien is entitled to priority depends on the terms to which BIA and the City agreed. By designating the improvements as BIA's personal property, the parties could effectively contract away RV Associates' statutory lien priority. This result contradicts the mandate to construe the mechanic's lien statute in a way that provides security to those protected by its terms. RCW 60.04.900.
¶ 44 The Haselwoods' interpretation overlooks the very reason for establishing mechanic's liens, namely, "the equitable principles of paying for work done or materials delivered, prevention of unjust enrichment, and estoppel to deny a benefit," as well as preventing detriment to laborers and material suppliers who expend their resources on others' property. 53 AM.JUR. 2d Mechanic's Liens § 2 (1996); see also Barber v. Honorof, 116 Idaho 767, 780 P.2d 89, 90-91 (1989); Sun Solutions, Inc. v. Brandt, 300 Or. 317, 709 P.2d 1079, 1081 (1985). Relation-back statutes are necessary to protect builders' interests because a builder or supplier cannot record a lien to protect its interests until the bill goes unpaid. See RCW 60.04.031(4) (notifying owner that lien may be filed if owner or contractor fails to pay). If priority can be established only on the date of recording, supplies and labor furnished on credit would always be vulnerable to intervening recorded claims. By enacting the relation-back statute, the legislature intended to safeguard the interests of suppliers and laborers, regardless of whether their improvements constitute part of the realty. See, e.g., RCW 60.04.051.
¶ 45 Thus, the trial court erred in interpreting RCW 60.04.061 to relate back only when the lien attaches to real property. Courts need not read statutes so literally that potentially absurd consequences result. See Fraternal Order of Eagles, 148 Wash.2d at 239, 59 P.3d 655. The Haselwoods' overly literal reading of the priority statute creates possible absurd and inequitable results that the legislature did not intend. RV Associates is entitled to establish its priority under RCW 60.04.061 as of the date it delivered equipment to the construction site.
¶ 46 Because the trial court erred in deciding the priority of RV Associates' lien, we reverse its order granting summary judgment to the Haselwoods. And because we conclude that the trial court erred in finding the Haselwoods' deed of trust senior to RV Associates' mechanic's lien, we do not address RV Associates' argument that it may remove its improvements regardless of priority. The appropriate remedy, if any, resolving BIA's outstanding obligations as to RV Associates will be determined on remand.

MOTION TO AMEND
¶ 47 RV Associates next contends that the trial court erred in denying its motion for leave to amend the complaint to add new claims against the Haselwoods and the City. It asserts that the trial court should have found good cause to amend. RV Associates argues that amendment would not prejudice the opposing parties and that the trial court should not have determined the amendments were futile without conducting a factual inquiry.
¶ 48 Under former CR 15(a) (2005), a party "may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." The purpose of the rule is to facilitate a proper decision on the merits and, to provide the parties with adequate notice of the basis of the claims or defenses asserted. Herron v. Tribune Publ'g Co., 108 Wash.2d 162, 165, 736 P.2d 249 (1987). We review the denial of a motion to amend a pleading for manifest abuse of discretion. Herron, 108 Wash.2d at 165, 736 P.2d 249. A trial court abuses its discretion when it bases its decision on untenable grounds or reasons. Nepstad v. Beasley, 77 Wash.App. 459, 468, 892 P.2d 110 (1995).
¶ 49 "The touchstone for denial of an amendment is the prejudice such amendment would cause the nonmoving party." Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters, 100 Wash.2d 343, 350, 670 P.2d 240 (1983). In determining prejudice, a court may consider undue delay and unfair surprise as well as the futility of amendment. Herron, 108 Wash.2d at 165, 736 P.2d 249.
*961 ¶ 50 We are satisfied that the trial court could have reasonably determined that the proposed amendments were meritless, futile, or unfairly prejudicial. RV Associates did not allege sufficient facts to establish a contract or a promise from the Haselwoods, nor did it aver with particularity facts constituting fraud as CR 9(b) required. Its claims against the City are groundless because the ice arena was privately funded, not a public work under RCW 39.04.010 subject to bond and retainage requirements; further, RV Associates cannot recover as a third party beneficiary to the concession agreement because that agreement expressly disclaimed any third party rights. See Postlewait Const., Inc. v. Great Am. Ins. Cos., 41 Wash.App. 763, 765, 706 P.2d 636 (1985), aff'd, 106 Wash.2d 96, 720 P.2d 805 (1986). Although the unjust enrichment claim may have merit, the trial court could have reasonably determined that RV Associates' delay in bringing the claim would be unfairly prejudicial.
¶ 51 "When a motion to amend is made after the adverse granting of summary judgment, the normal course of proceedings is disrupted and the trial court should consider whether the motion could have been timely made earlier in the litigation." Doyle v. Planned Parenthood, 31 Wash.App. 126, 130-31, 639 P.2d 240 (1982). In Doyle, after the defendant was granted summary judgment, the plaintiff sought to amend the complaint to add a cause of action that was not recognized in Washington. 31 Wash.App. at 131, 639 P.2d 240. The court concluded that because summary judgment had been granted, the motion was untimely, and the new theory of liability lacked legal support. The trial court did not abuse its discretion in denying the plaintiff leave to amend the complaint. Doyle, 31 Wash.App. at 132, 639 P.2d 240.
¶ 52 Similarly here, RV Associates waited until after suffering an adverse ruling on summary judgment to amend its pleadings, even though nearly one and one-half years elapsed between the time RV Associates filed its answer and counterclaim and the trial court granted summary judgment to the Haselwoods. Further, the litigation addressed only RV Associates' lien claim, which requires a different factual inquiry than that required in an unjust enrichment cause of action. Allowing RV Associates to pursue entirely new theories of liability at this stage would prejudice the other parties' interests in promptly resolving the claims. The trial court did not abuse its discretion in denying RV Associates leave to amend its pleadings after summary judgment was granted.[6]

ATTORNEY FEES
¶ 53 The trial court awarded the Haselwoods statutory $200 attorney fees plus costs under RCW 4.84.080 and CR 78(e). RCW 4.84.010 allows the prevailing party in a civil action to recover costs and disbursements. Because we reverse the trial court's order awarding the Haselwoods summary judgment, we also reverse the award of attorney fees below. And we decline to award the Haselwoods fees on appeal under RCW 60.04.181(3) (allowing the party prevailing in a lien dispute to recover its attorney fees on appeal as well as in the lower court). See Irwin Concrete, Inc. v. Sun Coast Props., Inc., 33 Wash.App. 190, 200-01, 653 P.2d 1331 (1982).
¶ 54 RV Associates' request for attorney fees on appeal does not comply with RAP 18.1, and we decline to award them on appeal. See Thweatt v. Hommel, 67 Wash.App. 135, 148, 834 P.2d 1058 (1992). Further, RV Associates' request for attorney fees in the trial court under RCW 60.04.181(3) is premature because it has not yet prevailed in the lien dispute.[7] The trial court can award RV Associates attorney fees under this statute if it determines that the lien is valid and enforceable.
*962 ¶ 55 Affirmed in part, reversed in part, and remanded for further proceedings.
We concur: HUNT and VAN DEREN, JJ.
NOTES
[1] Chuck Haselwood died on November 20, 2006. We therefore refer to Joanne Haselwood and the estate of Chuck Haselwood, collectively, as "the Haselwoods."
[2] BIA later executed a second promissory note to the Haselwoods in exchange for $769,821.03 at 10 percent interest, secured by the original deed of trust and security agreement. The second note was then consolidated with the first and BIA executed a third promissory note for $4,544,821.03 at 10 percent interest, secured by the same documents.
[3] See, e.g., CP at 263: "Premises does not include the fee ownership or leasehold interest of the real property upon which the Improvements are located" and "any and all development and construction of improvements to the Premises are owned by CONCESSIONAIRE during the term of this Agreement."; 2 CP at 277: "[T]he Collateral shall remain personal property even though the trade fixtures may be affixed to or placed upon the Premises."; 2 CP at 280: "It is mutually understood and agreed that the real property constituting the Premises of this Agreement is the real property of the CITY and that all improvements to said real property shall revert to the CITY at the termination of this Agreement."
[4] A review of the case law reveals no instance in which another jurisdiction has followed the American Seating rule. See, e.g., North Bay Const., Inc. v. City of Petaluma, 143 Cal.App.4th 552, 49 Cal.Rptr.3d 455, 460-61 (Cal.Ct.App. 2006) (holding distinction between proprietary and governmental purposes was abolished by the legislature); City of Westminster v. Brannan Sand & Gravel Co., 940 P.2d 393, 395-96 (Colo.1997) (refusing to depart from the common law rule that public property is not lienable); Dep't of Community Affairs & Econ. Dev. v. M. Davis & Sons, Inc., 412 A.2d 939, 941-42 (Del.1980) (construing lien statute strictly and concluding that in the absence of statutory language to the contrary, public property is not lienable); but see Comstock & Davis v. City of Eden Prairie, 557 N.W.2d 213 (Minn.Ct.App.1997) (when lien statute exempts property held for a public purpose, lien can attach to public land held in a proprietary capacity). Although several jurisdictions held prior to American Seating that public property held in a proprietary capacity is subject to execution, those cases have not generally been followed in recent years. See, e.g., Kerr v. New Orleans, 126 F. 920 (5th Cir.1903); City of Bradenton v. Fusillo, 134 Fla. 759, 184 So. 234 (1938); City of Hazard v. Duff, 287 Ky. 427, 154 S.W.2d 28 (1941).
[5] RCW 60.04.021 authorizes any person who furnishes labor, materials, professional services, or equipment for the improvement of real property to place a lien upon the improvement. Under RCW 60.04.171, the lien may be enforced in a foreclosure action in which the court has the power to order the property sold to satisfy the lien. RCW 60.04.031 establishes how the lien shall be created and provides sample notices, all of which indicate that the person supplying professional services, materials, or equipment may file a lien against the property in the event of nonpayment. Finally, RCW 60.04.051 establishes that there is one lien, which ordinarily attaches to real property; but in the event the lien is unable to attach to the real property, the obligation may be enforced by removing the improvement. These provisions contradict the Haselwoods' assertion that chapter 60.04 RCW distinguishes between liens on realty and liens on improvements.
[6] Because we remand to the trial court, we do not foreclose RV Associates' ability to petition the trial court for further amendment to its claim.
[7] For example, the Haselwoods argued below that RV Associates was not entitled to summary judgment because a material question of fact existed concerning the amount of BIA's obligation to RV Associates. We hold only that RV Associates' mechanic's lien is prior to the Haselwoods' deed of trust, without ruling on the lien's validity.