[No. 31687-7-I.   Division One.   October 11, 1993.]

3A INDUSTRIES, INC., *Respondent,* v. TURNER CONSTRUCTION COMPANY, ET AL, *Appellants.*

408

*Joseph Calmes, Betsy A. Gillaspy,* and *Windus, Thomas, Calmes & Wiley,* for appellants.

*John P. Ahlers, Charles Holley,* and *Barokas & Martin,* for respondent.

PER CURIAM. — A commissioner of this court ruled that the superior court's denial of appellants Turner Construction's (Turner) and Federal Insurance Company's (Federal) motion for stay pending arbitration was appealable as a matter of right. This court denied respondent 3A's motion to modify the commissioner's ruling and further ordered that the merits of the appeal should be briefed in an expedited fashion and the case heard on the next available judges' motion calendar. Having received the parties' briefs and considered the merits of the appeal, we reverse the decision of the trial court.

### FACTS

Turner contracted with the State of Washington to act as the prime contractor on an inmate housing project at McNeil Island Corrections Center. On May 17, 1991, Turner executed a subcontract with 3A in which 3A agreed to provide the labor necessary to install precast wall panels in certain build-

ings described in the prime contract. A dispute subsequently arose between Turner and 3A with regard to payment for 3A's work. On May 15, 1992, 3A filed suit against Turner, Federal Insurance (Turner's surety), and the State of Washington, Department of Corrections.

Turner and Federal moved for a stay of the matter pending arbitration pursuant to RCW 7.04.030. They argued that the contract executed between 3A and Turner incorporated by reference the arbitration clause in the prime contract that had been executed between Turner and the State of Washington.

3A opposed the stay arguing that the contract between 3A and Turner did not incorporate any arbitration clause, that Federal was not a party to the subcontract and 3A had a statutory right under the "Little Miller Act" (RCW 39.08) to pursue its claim against Federal even if the prime contract arbitration clause was determined to be binding on 3A.

Judge Steven Scott denied the motion for stay as well as Turner's motion for reconsideration. No findings of fact were entered.

The issue presented on appeal is whether the trial court erred in concluding that the arbitration provision of the prime contract was not incorporated by reference into the subcontract and, therefore, Turner and Federal were not entitled to a stay pending arbitration?

DECISION

Article 1 of the subcontract between Turner and 3A states:

> The Subcontractor shall perform and furnish all the work, labor services, materials, plant, equipment, tools, scaffolds, appliances and other things necessary for **Receive, Distribute and Erect Precast Wall Panels, Buildings A, B, C, D, E and F** (hereinafter called the Work) for and at the McNeil Island Corrections Center, Inmate Housing Package (hereinafter called the Project), located on premises at McNeil Island, Washington (hereinafter called the Premises), as shown and described in and in strict accordance with the Plans, Specifications, General Conditions, Special Conditions and Addenda thereto prepared by

Sverdrup Corporation (hereinafter called the Architect) and with the terms and provisions of the General Contract (hereinafter called the General Contract) between Turner and the State of Washington Department of Corrections (hereinafter called the Owner) dated April 23, 1991, and in strict accordance with the Additional Provisions, page(s) 7A, 7B, 7C, 7D, 7E and 7F annexed hereto and made a part hereof.

Article 2 of the subcontract states:

With respect to the Work to be performed and furnished by the Subcontractor hereunder, the Subcontractor agrees to be bound to Turner by each and all of the terms and provisions of the General Contract and the other Contract Documents, and to assume toward Turner all of the duties, obligations and responsibilities that Turner by those Contract Documents assumes toward the Owner, and the Subcontractor agrees further that Turner shall have the same rights and remedies as against the Subcontractor as the Owner under the terms and provisions of the General Contract and the other Contract Documents has against Turner with the same force and effect as though every such duty, obligation, responsibility, right or remedy were set forth herein in full. The terms and provisions of this Agreement with respect to the Work to be performed and furnished by the Subcontractor hereunder are intended to be and shall be in addition to and not in substitution for any of the terms and provisions of the General Contract and the other Contract Documents.

This Subcontract Agreement, the provisions of the General Contract and the other Contract Documents are intended to supplement and complement each other and shall, where possible, be thus interpreted.

The General Conditions of the prime contract contains a section entitled "Dispute Resolution". It states in part:

any controversy or claim arising out of or relating to this Contract or breach thereof and the Owner[s] decision [on the claim or controversy], shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

Based upon these contractual provisions, Turner and Federal argue that the arbitration clause of the prime contract was incorporated by reference into the subcontract and, therefore, 3A agreed to arbitrate all disputes regarding the

subcontract. 3A responds that absent an express provision in the subcontract making the arbitration clause of the prime contract applicable, this court should not hold that 3A has contractually abandoned its right of action on the bond as provided by the "Little Miller Act", RCW 39.08. 3A cites several federal cases decided under the Federal Miller Act, 40 U.S.C. § 270(a), in support of this contention.

Like the Federal Miller Act, Washington's "Little Miller Act" requires contractors to obtain bonds on public works projects for the protection of laborers and materialmen because mechanics' liens are unavailable on such projects. *Hall & Olswang v. Aetna Cas. & Sur. Co.*, 161 Wash. 38, 296 P. 162 (1931). RCW 39.08.030 provides laborers and mechanics a right of action in their own name against the bond for work done or materials or goods furnished in the project.

In a series of cases, the federal courts have considered whether a subcontractor's Miller Act right to sue on a bond was relinquished when the subcontract incorporated the prime contract by reference and the prime contract contained a "disputes clause". 3A contends that these cases support its assertion that the prime contract arbitration clause in the case at bar was not incorporated by reference into the subcontract. 3A's reliance on these cases is somewhat misleading because 3A gives an overly expansive reading to the term "disputes clause" as utilized in the federal cases.

In the seminal case of *Fanderlik-Locke Co. v. United States ex rel. Morgan*, 285 F.2d 939 (10th Cir. 1960), *cert. denied*, 365 U.S. 860, 5 L. Ed. 2d 823, 81 S. Ct. 826 (1961), a subcontractor sought to recover from the prime contractor and the bondsman under the Federal Miller Act the value of labor performed and materials installed beyond that provided for in the subcontract. On appeal, the circuit court reversed the trial court judgment in favor of the subcontractor on the ground that the subcontractor had failed to exhaust his administrative remedies as required by the "disputes clause" of the prime

contract. Upon reconsideration following rehearing, the circuit court withdrew its former opinion and affirmed the judgment in favor of the subcontractor. *Fanderlik-Locke*, 285 F.2d at 941.

According to the court, the subcontract provided

> that the subcontractor should furnish material and perform labor in accordance with the general conditions of the contract between the owner and the contractor and "in accordance with the Drawings and the Specifications attached hereto which form a part of a Contract between the Contractor and the Owner * * * and hereby become a part of this Contract." The parties to the subcontract agreed "to be bound by the terms of this Agreement, the A.I.A. General Conditions attached, the drawings and specifications attached as far apprehensible to this subcontract * * *." It was further provided that the subcontractor should be bound to the contractor "by the terms of the Agreement, General Conditions, Drawings and Specifications, and to assume toward him all the obligations and responsibilities that he, by those documents, assumes toward the Owner."

*Fanderlik-Locke*, 285 F.2d at 942.

The prime contract was "the standard form of government construction contract in general use at the time of its execution" and it contained the following "disputes clause":

> "Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. Within 30 days from the date of receipt of such copy, the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the head of the department, and the decision of the head of the department or his duly authorized representatives for the hearings of such appeals shall, unless determined by a court of competent jurisdiction to have been fraudulent, arbitrary, capricious, or so grossly erroneous as necessarily to imply bad faith, be final and conclusive: Provided, That, if no such appeal to the head of the department is taken, the decision of the Contracting Officer shall be final and conclusive * * *.

*Fanderlik-Locke*, 285 F.2d at 941 (quoting dispute clause of the prime contract).

The court rejected the prime contractor's contention that the disputes clause of the prime contract was incorporated

into the subcontract by reference and, therefore, the subcontractor could not maintain a suit under the Miller Act until a final determination was rendered by the contracting officer as required under the disputes clause. The court noted that the Miller Act was intended to provide security for those who furnish labor and materials in the performance of a government contract and should be liberally construed to effectuate that purpose. The liability of the United States is to the prime contractor and the disputes clause provides only for administrative consideration of claims made by the prime contractor who may seek a remedy in the court of claims if dissatisfied with the administrative disposition. *Fanderlik-Locke*, 285 F.2d at 942.

The subcontractor, on the other hand, has no contract, express or implied, with the government and is afforded no procedure by which to present a claim against the government except as it may become a claim of the prime contractor.

> The subcontractor has no standing before the Contracting Officer or the Board of Contract Appeals, and no provision is made for the hearing of disputes between a prime contractor and a subcontractor. The remedy for one seeking to recover for labor and materials furnished on a government contract is under the Miller Act, and ordinarily the fact that a prime contractor has a claim for the same amounts pending under the "disputes clause" of the prime contract, does not affect Miller Act cases.

(Footnote omitted.) *Fanderlik-Locke*, 285 F.2d at 942.

The court concluded that if the subcontractor

> is limited to the presentation of his claims as provided for in the "disputes clause" of the prime contract, he has surrendered his right to the benefits of the Miller Act provisions. The findings of the administrative authorities as to the amount he is entitled to recover would be conclusive, unless the court determined them to be "fraudulent, arbitrary, capricious, or so grossly erroneous as necessarily to imply bad faith." An agreement should not be construed to bring about such a result unless it be "manifest by plain language" of the contract. The language of the subcontract manifests no such intention. The subcontract references are to the "general conditions" of the prime contract not the "general provisions," and they relate generally to performance of the subcontract according to speci-

fications, not to the settlement of disputes, or the subcontractor's right to sue under the Miller Act.

(Footnote and citations omitted.) *Fanderlik-Locke*, 285 F.2d at 943. The court stated that it expressed no opinion as to the right of the parties to enter into an agreement that would circumvent the Miller Act. The court simply held that it was not the intention of the parties at bar. *Fanderlik-Locke*, 285 F.2d at 942.

Subsequent cases have employed the *Fanderlik-Locke* court's analysis in concluding that a subcontractor is not bound to exhaust his administrative remedies as provided in the "disputes clause" of the prime contract before maintaining an action under the Miller Act. *Central Steel Erection Co. v. Will*, 304 F.2d 548, 551 (9th Cir. 1962); *H.W. Caldwell & Son, Inc. v. U.S. ex rel. John H. Moon & Sons, Inc.*, 407 F.2d 21 (5th Cir. 1969); *Warrior Constructors, Inc. v. Harders, Inc.*, 387 F.2d 727, 729 (5th Cir. 1967); *United States ex rel. B's Co. v. Cleveland Elec. Co.*, 373 F.2d 585, 588 (4th Cir. 1967); *Washington Metro Area Transit Auth. ex rel. Noralco Corp. v. Norair Eng'g Corp.*, 553 F.2d 233, 235 (D.C. Cir. 1977) (applying reasoning to a non-Miller Act case where statute imposing bond requirement for public works contract was similar to Miller Act); *United States ex rel. N.U., Inc. v. Gulf Ins. Co.*, 650 F. Supp. 557, 558 (S.D. Fla. 1986) (subcontract provision that gives prime contractor the same rights against a subcontractor as the owner has against the subcontractor does not make the disputes clause of the general contract applicable); *John W. Johnson, Inc. v. Basic Constr. Co.*, 429 F.2d 764, 774-76 (D.C. Cir. 1970). As noted in *United States ex rel. N.U., Inc. v. Gulf Ins. Co., supra,* "[c]ompelling the subcontractor to comply with the disputes provision puts it in a vulnerable position, because it must rely on the prime contractor to present its claim." *United States ex rel. N.U., Inc.*, 650 F. Supp. at 558.

While the courts have been disinclined to incorporate by reference these prime contract "disputes provisions" which provide for an administrative determination of rights in the

absence of the subcontractor, the courts have recognized a distinction when the assertion is that the subcontractor agreed to *arbitrate* any disputes arising under the subcontract. *J.S.&H. Constr. Co. v. Richmond Cy. Hosp. Auth.*, 473 F.2d 212 (5th Cir. 1973) was a diversity case involving a contract to build a university hospital in Georgia. The prime contractor, George A. Fuller Co., was incorporated in Maryland with a principal place of business in New York. The subcontractor, J.S.&H. Construction Co., was a New Mexico company. *J.S.&H.*, 473 F.2d at 213. Fuller, and its surety, Aetna, executed a payment bond which guaranteed prompt payment for labor and materials used in the project. J.S. &H. sued Fuller, Aetna and the Hospital Authority for work and materials supplied on the project. The Hospital cross-claimed against Fuller and Aetna. Fuller and Aetna then moved for a stay of proceedings pending arbitration between J.S.&H. and Fuller. Fuller argued that J.S.&H. had agreed to arbitration by virtue of a clause in the subcontract which incorporated by reference the "General Conditions" of the prime contract — one of the conditions being an agreement to arbitrate. The District Court granted the motion for stay pending arbitration and J.S.&H. appealed requesting a vacation of the stay. *J.S.&.H.*, 473 F.2d at 214.

On appeal, J.S.&H. argued that the incorporation of the prime contract's "General Conditions" by reference was ineffective to make the prime contract's arbitration provision a part of the subcontract. Although the case did not arise under the Miller Act, J.S.&H. cited the Federal Miller Act cases for support of its contention.

The court framed the issue as "whether the Miller Act cases create a special rule or exception which prevents incorporation of an arbitration provision by general reference" in a subcontract. *J.S.&H.*, 473 F.2d at 215. The court cited extensively from *Fanderlik-Locke* and noted that the disputes clause provision in that case and the others cited by J.S.&H. amounted "to a virtual forfeiture of the subcontractor's Miller

Act rights." *J.S.&H.*, 473 F.2d at 216. The arbitration clause at issue in *J.S.&H.* was distinguishable.

> J. S. & H.'s position under the arbitration provision at issue in this case is significantly different from the position the subcontractors would have occupied under the disputes clause in the Miller Act cases. Under the arbitration provision J. S. & H. does not lose its right to press its claim against Fuller and need not passively rely on Fuller's presentation of a corresponding claim to the Hospital Authority. The arbitration procedure provided contemplates participation by both prime and subcontractor, and J. S. & H. may pursue and protect its own interests in the proceedings. The arbitrator's award may later be subjected to judicial scrutiny. A contract provision of this type requiring arbitration before litigation is not a harsh one or, we think, one which a subcontractor would probably not intend to accept by way of a general incorporation by reference. On the contrary, such a contract provision provides a common and rational means for settling contract disputes and accords fully with the policy of the Federal Arbitration Act. We find the rationale of the Miller Act cases inapplicable to the instant case, and hold that the prime contract arbitration provision was incorporated by reference into the subcontract and is binding on appellant J. S. & H.

*J.S.&H.*, 473 F.2d at 216.

Admittedly, *J.S.&H.* was not a case arising under the Federal Miller Act. However, the court noted that J.S.&H. stated that the payment bond was required by Georgia state law, but failed to cite any authority for that proposition. Nonetheless, the court stated that even if the applicable Georgia statute had a purpose similar to the Miller Act, the court did not believe that the existence of the statute alone would require following the rationale of the Miller Act cases. *J.S.&H.*, 473 F.2d at 215 n.8.

The reasoning employed in *J.S.&H.* has been utilized in at least three other non-Miller Act cases. *Uniroyal, Inc. v. A. Epstein & Sons, Inc.*, 428 F.2d 523 (7th Cir. 1970) (a precursor to *J.S.&H.* in which the George A. Fuller Company was the subcontractor who was held to have agreed to the arbitration provision of the prime contract by reference); *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974 (4th Cir. 1985); *Gibbons-Grable Co. v. Gilbane Bldg. Co.*, 34 Ohio App. 3d 170, 517

N.E.2d 559 (1986). The court in *Maxum Founds., Inc. v. Salus Corp.*, *supra*, noted that:

> forcing the [subcontractor] to submit to arbitration does not work a forfeiture of any special rights vested in subcontractors, but merely relegates [the subcontractor] to the dispute forum provided for by an incorporated term of its subcontract . . ..

*Maxum Founds., Inc.*, 779 F.2d at 981.

The *J.S.&H.* court accurately characterized the federal courts' rationale for refusing to permit disputes clauses from being incorporated by reference in subcontracts under the Miller Act. We find the distinction drawn in *J.S.&H.* between disputes clauses and arbitration clauses persuasive. Accordingly, the cases relied upon by 3A are not controlling. Furthermore, the language of the subcontract between Turner and 3A distinguishes this case from the disputes clause cases cited by 3A.

3A asserts in its brief that "the Federal Miller Act cases long ago established that language identical to that relied upon here by Turner would not operate to incorporate the dispute provisions of the general contract, and thus would not operate to deprive a claimant of its right to sue directly on the bond." Brief of Respondent, at 7. However, in the cases relied upon by 3A, the terms of the subcontract required the subcontractor "to assume toward [the contractor] all the obligations and responsibilities that [the contractor], by [the prime contract], assumes toward the Owner." *Fanderlik-Locke Co. v. United States ex rel. Morgan*, 285 F.2d at 942. *See also United States ex rel. B's Co. v. Cleveland Elec. Co.*, 373 F.2d at 588; *United States ex rel. N.U., Inc. v. Gulf Ins. Co.*, 650 F. Supp. at 558 (subcontract stated that the contractor shall have "the same rights and privileges" against the subcontractor as the owner in the general contract had against the contractor). As stated in *H.W. Caldwell & Son, Inc.*,

> before a subcontractor will be held contractually bound to the procedure set out in the principal contract's "disputes" clause, there must be a provision in the contract between the sub and the prime making the "disputes" clause expressly applicable.

In the instant case there is no such clause but only a general incorporation by reference of the terms of the principal contract. We hold that this refers only to the quality and manner of the subcontractor's work, not the rights and remedies he may have against the prime contractor.

*H.W. Caldwell & Son, Inc. v. U.S. ex rel. John H. Moon & Sons, Inc.*, 407 F.2d at 23. Subcontract references to the "general conditions" of the prime contract and not the "general provisions" generally relate to the "performance of the subcontract according to specifications, not to the settlement of disputes, or the subcontractor's right to sue under the Miller Act." *Fanderlik-Locke Co. v. United States ex rel. Morgan*, 285 F.2d at 943.

Article 2 of the subcontract in the case at bar states in pertinent part:

> and the Subcontractor agrees further that Turner shall have the same *rights and remedies* as against the Subcontractor as the Owner under the terms and provisions of the General Contract and the other Contract Documents has against Turner with the same force and effect as though every such duty, responsibility, *right or remedy were set forth herein in full.*

(Italics ours.) In the text of 3A's brief, this portion of article 2 is deleted and replaced with ellipses. Brief of Respondent, at 2.

Unlike the vague reference to "rights", "responsibilities" and "obligations" found in the aforementioned disputes clause cases, the subcontract in the case at bar specifically states that Turner will have the same "remedies" against 3A as the State has against Turner.[1] The term "remedy" means "the legal means to recover a right or to prevent or obtain redress for a wrong." *Webster's Third New International Dictionary* 994 (1971). We hold that 3A's explicit agreement to afford

---

[1] *United States Steel Corp. v. Turner Constr. Co.*, 560 F. Supp. 871 (S.D.N.Y. 1983) appears to be the only case that contains the same "rights and remedies" language as the subcontract in the case at bar. Although *United States Steel Corp.* was a non-Miller Act case, the court employed the reasoning of the disputes clause cases to preclude incorporation by reference of a forum selection clause. The case is of no utility in our analysis because the implications of the "rights and remedies" language in the subcontract were not considered by the court.

Turner the same remedies that the State would have against Turner effectively bound 3A to submit to arbitration should Turner demand that forum for dispute resolution.[2]

For the reasons set forth above, the decision of the trial court denying appellants' motion for a stay pending arbitration is reversed and the case remanded for further proceedings.[3]

Review denied at 124 Wn.2d 1006 (1994).

---

[2]We note that under the language of the subcontract, no reciprocal right to arbitration is granted to 3A. Accordingly, we conclude that 3A did not waive its right to file a claim under the Miller Act only that 3A agreed to submit the claim to arbitration should Turner demand that forum.

[3]3A has requested an award of attorney fees on appeal pursuant to RCW 39.08.030 which states in pertinent part: ". . . in any suit or action brought against such surety or sureties by any such person or corporation to recover for any of the items hereinbefore specified, the claimant shall be entitled to recover in addition to all other costs, attorney's fees in such sum as the court shall adjudge reasonable . . .". The request for attorney fees is premature because 3A has yet to prevail in its action on the bond. Accordingly, the request for attorney fees is denied.