# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CORTINAS PAINTING & RESTORATION, INC., a Washington Corporation, | ) ) ) | No. 75728-8-I |
| Appellant, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| CORP INC., CONSTRUCTION, a Nevada Corporation; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, BOND NO. 103481034; TRAVELERS CASAULTY AND SURETY COMPANY OF AMERICA BOND NO. 10971249; and the CITY OD MERCER ISLAND, | ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| | ) ) | |
| Respondents. | ) | FILED: October 16, 2017 |

SPEARMAN, J. — Cortinas Painting & Restoration, Inc., (Cortinas) subcontracted with Corp Construction Inc., (Corp) to complete the painting and finishes for a new fire station for the city of Mercer Island (City). The project was plagued by delays, some caused by Cortinas, which resulted in $671,250 in daily liquidated damages withheld by Mercer Island. Corp, in turn, withheld payment from Cortinas. Cortinas sued for the contract balance and Corp counter-sued for Cortinas' contribution to project delays. The trial court found that Cortinas was responsible for the delays as alleged by Corp, and ordered damages. These damages did not account for the lower actual liquidated damages rate that Corp

incurred once it settled with Mercer Island. In this respect, the trial court erred and we reverse. In all other respects, we affirm.

## FACTS

The City of Mercer Island contracted with Corp to build a new Fire Station No. 92. The total contract price was $3,500,000. General contractor Corp engaged various subcontractors to complete particular aspects of the project. Cortinas was the subcontractor "'to complete all painting and coating, exterior transparent wood finishes, [staining] and high performance exterior steel coatings'" for $34,572. Clerk's Papers (CP) at 155-56.

Corp began the project on January 6, 2014 and anticipated completion by November 1, 2014. Corp agreed that it was liable to the City for liquidated damages of $3,750 per day if it took longer than 300 days to complete the project. Cortinas agreed in its subcontract that it was responsible for liquidated or actual damages incurred by Corp due to Cortinas' failure to perform its work in a timely manner. The project was not finished on time and some of the project delays were attributable to Cortinas.

Cortinas was required to stain exterior wood siding for the station. But first it had to provide samples of the stain to the architect for approval. There were problems with the samples. Cortinas first provided samples that were stained only on one side, even though project specifications required staining on all sides. Cortinas delivered the fully stained samples on November 12, 2014, but they were the wrong color. Cortinas re-stained the samples, but they were too dark. The third sample was rejected due to "[s]treaking and mottled stain finish" and other application problems. Exhibit (Exh.)222. The architect approved the

2

fourth submittal. Corp's project manager, Adam French, testified that problems with the samples caused two days of delay to the project on December 12 and 15, 2014.

Once the samples were approved, Cortinas could begin staining the wood siding for the station's exterior. But this was also delayed. When the cedar lumber for the siding was ready for delivery on January 9, 2015, Cortinas did not have a working forklift, so it could not take delivery of the lumber for ten days. French ascribed two days of delay to the project's completion for Cortinas' inability to take delivery of the lumber. Once delivered, Cortinas began staining the lumber. They used a stain that takes a long time to dry, and that must be applied in a warm environment. Corp presented evidence that the stain was not applied in a warm environment. On January 29, Cortinas indicated that the siding was ready for pick up. But the siding was still wet, so it could not be transported to the jobsite. French testified that Cortinas' staining problems delayed the project by three days.

Cortinas was also required to paint the exposed steel casings for the large doors to the fire truck's bays. First they painted a mock-up of the finish with Tnemec paint. This sample section was approved for its 3/8 inch nap finish, but rejected for color. Cortinas was nevertheless allowed to proceed. Cortinas painted the casings with the correct color, but used a 1/2 inch nap finish. The work was rejected because the finish deviated from the approved mock up. Cortinas sanded down the Tnemec paint and repainted with a 3/8 inch nap. Because the doors could not be installed until the casings were painted correctly,

French testified that the nap problem delayed installation of the doors by two days.

Cortinas was required to paint the wood base for the perimeter of some rooms in the station. Corp scheduled installation of the base for February 11, 2015 and notified Cortinas on January 26 that it could begin painting the base. Cortinas did not deliver the painted boards until February 13. French testified that this delayed other interior finishes to the project by one day.

Project plans required that some conduits and ducting installed below the ceiling be painted after installation. Cortinas believed that they were required to paint the ceiling, rather than the installations below it. This misunderstanding delayed the project by one day because it held up installation of other interior finishes and systems.

Corp became frustrated by Cortinas' slow pace of work and issued a notice of delay that Cortinas must properly staff the project within 24 hours. Cortinas substantially increased its man hours on the project. French testified that the understaffing caused one day delay to project completion.

Cortinas was required to paint a fire hydrant and exterior fire department connection (FDC). Cortinas initially painted the hydrant and FDC the wrong colors, and as a result the building failed the City's civil inspection. French testified that the painting problem delayed the project by one day, for a total of thirteen alleged days of delay.

When the project went beyond its projected completion date, the City began withholding $3,750 per day from its payments to Corp. They continued withholding until the fire station received a certificate of occupancy on May 5,

2015. The withheld damages totaled $671,250. Corp withheld payment of Cortinas' final bill totaling $15,745.28. Cortinas sued Corp for the unpaid bill. Corp answered and counterclaimed for damages related to Cortinas' delays. In a separate lawsuit, Corp sued the City for $1,201,170. To settle, the City paid Corp $575,000. The City retained the difference, $626,170, to offset $671,250 in daily liquidated damages.

In a six day bench trial, the trial court found that Cortinas was responsible for thirteen days of delay to the project. CP at 158. The court applied Corp's daily liquidated damages rate of $3,750 for a total of $48,750 in passed along liquidated damages. In addition, the court found that Cortinas caused Corp $7,116.83 in losses as a result of delays. This totaled $55,857.33 in damages, which was offset by Cortinas' unpaid bill for a total of $40,122.05 in damages owed by Cortinas.

As of trial in June 2016, the station was still not substantially complete because the roof required reconstruction.

## DISCUSSION

Critical Path Delay

Cortinas argues that there is not substantial evidence to support the trial court's finding that it caused thirteen days of delay to the project.

A trial court's findings of fact are reviewed for substantial evidence. In re Estate of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). There is a presumption in favor of the trial court's findings, and the party claiming error has the burden of showing that a factual finding is not supported by substantial evidence. Fisher Properties, Inc. v. Arden–Mayfair, Inc., 115 Wn.2d 364, 369, 798 P.2d 799

(1990). Substantial evidence supports a finding of fact where there is sufficient evidence in the record to persuade a fair-minded person of the truth of the finding. Hegwine v. Longview Fibre Co., Inc., 162 Wn.2d 340, 352–53, 172 P.3d 688 (2007). We view the evidence and inferences in the light most favorable to the prevailing party. Lewis v. Dep't of Licensing, 157 Wn.2d 466, 468, 139 P.3d 1078 (2006).

For a construction delay to be compensable, it must be on the critical path of the project such that it delays completion of the entire project. Mega Const. Co., Inc. v. United States, 29 Fed. Cl. 396, 425 (1993). It is not enough for an activity to be delayed: the activity delay must increase the time necessary for total performance of the work. Id. Critical path methodology analyzes the legal requirement that a delay affects overall completion of a project. Morrison Knudsen Corp. v. Fireman's Fund Ins. Co., 175 F.3d 1221, 1233 (10th Cir. 1999). An informal analysis is sufficient to determine whether a contractor has met its burden of proof on that requirement. Id.

Cortinas first argues that expert witness Richard Shiroyama's critical path methodology was insufficiently rigorous. Shiroyama did an "as-planned" critical path analysis: he studied Corp's critical path schedule for completing the station and the time that Cortinas took to complete each aspect of work. Cortinas contends that he should have done a critical path analysis of the project as it was actually built, not as scheduled. But, once the testimony was admitted without objection, Cortinas' arguments about methodology go to the weight accorded by the fact finder. On appeal, this court does not reweigh the evidence.

6

Cortinas next contends that Shiroyama's testimony is inconsistent with other evidence at trial. Shiroyama did not find critical path delays with respect to the Tnemec paint and wood base. But French testified that these activity delays did cause critical path delays. While Shiroyama is slightly inconsistent with French, the court's findings with respect to Tnemec paint and wood base delays are nevertheless supported by the substantial evidence of French's testimony.

Cortinas also argues that French did not support his testimony with a critical path schedule. But critical path methodology does not require a critical path schedule. It is a commonsense approach to assessing project delays. Morrison Knudsen, 175 F.3d at 1233. For each delay, French detailed the scope of work, Cortinas' actions delaying that work, the dates of delay, and the impact of delay. This is substantial evidence supporting the trial court's finding of thirteen days of delay.

Cortinas also argues that Corp must prove delay to substantial completion of the project rather than to the certificate of occupancy. We agree with Corp that this issue was not raised at trial and we decline to review it under RAP 2.5.

We affirm the trial court's findings of delay.

<u>Concurrent Delays</u>

Cortinas argues that the trial court erred when it did not find concurrent delays requiring apportionment of damages. Concurrent delay occurs when both parties to the contract cause some kind of delay. "Note, however, that concurrent delay does not need to exactly overlap; rather, the delay need only be related by circumstances, not necessarily over the same period of time." 33 MATTHEW KING,

WASHINGTON PRACTICE: CONSTRUCTION LAW MANUAL §12.12 at 31 (Supp. 2016-2017).

Cortinas argues that roof delays were concurrent with its delays, because the roof was defective while Cortinas did its work. But the roof was rebuilt after the certificate of occupancy was issued. Roof delays were therefore not interrelated or concurrent with Cortinas' delays. Cortinas also argues that delays to exterior lighting, the exhaust system, and the front door lock were concurrent because they could have been completed before or during their work on the fire hydrant and FDC. Both Shiroyama and French testified that there were no concurrent delays to the thirteen days alleged by Corp. Shiroyama reviewed project documentation such as daily reports, correspondence, and schedules to arrive at his conclusion that there were no concurrent delays. French concluded that Cortinas caused thirteen days of delay by excluding concurrent delays. Given Shiroyama's and French's testimony, there is substantial evidence that Cortinas' delays were not concurrent to the roof, exterior lighting, exhaust system, and front door lock delays.

Pass along Liquidated Damages

Cortinas argues that the trial court erred in awarding pass-along liquidated damages of $48,750.[1] Cortinas contends that Corp actually paid less than $3,750 in daily liquidated damages, so the lower rate should have been passed along.

We will not disturb the fact finder's award of damages unless it is outside the range of substantial evidence in the record, shocks the conscience, or appears to have been arrived at as the result of passion or prejudice. Harmony at Madrona Park Owners Ass'n v. Madison Harmony Dev., Inc., 160 Wn. App. 728, 737, 253 P.3d 101 (2011).

With respect to damages, the trial court found:

19. The City of Mercer Island asserted 179 days of delay to the completion of the project and withheld 179 days of liquidated damages against Corp Construction in the amount of $671,250, which was the product of $3,750 of liquidated damages per day multiplied by 179 days. [Ex. 243] In turn, 13 of those 179 project delay days, and resulting liquidated damages of the City, should be assessed to Cortinas Painting in the amount of $48,750. The $48,750 is the product of $3,750 of liquidated damages per day multiplied by 13 days.

20. Corp Construction is entitled to the recovery of $48,750 pursuant to the last sentence of Section 15.2 of the Subcontract. Of the $671,250 liquidated damages (noted above) withheld by the City, $626,170 were retained by the City of Mercer Island as a damages-payment setoff pursuant to a settlement agreement between Corp Construction and the City of Mercer Island. [Ex. 244 at pp. 1 (Recitals B and D (City's damages for delay)) and 2 (Recital H and Paragraph 2)]. The damages-payment setoff is for liquidated or actual damages imposed by the City of Mercer Island upon Corp Construction or otherwise incurred by Corp Construction, in part, as a result of 13 project-delay days caused by Cortinas Painting as specified at the last sentence of Section 15.2 of the Subcontract.

---

[1] Cortinas additionally challenges these damages on the basis that they amount to a penalty. Corp correctly argues that Cortinas raises this issue for the first time on appeal. While Cortinas elicited testimony that the liquidated damages were "unfair" and "a lot of money", it did not argue that they were a penalty. VRP at 64. In closing arguments, Cortinas' attorney stated, "[t]he liquidated damages are not a penalty." VRP at 879. We decline to consider this issue.

CP at 159. The settlement agreement between Corp and the City reflects that the City ultimately assessed liquidated damages of only $626,170:[2]

> 2. Corp asserted causes of action against the City in the Corp Lawsuit for damages in the amount of $1,201,170 (including sales tax). To settle those causes of action, the City shall pay Corp the amounts identified in Paragraph 3 below, [$575,000,] and with the $626,170 difference representing the damages sought by the City which Corp contends is caused by the Subcontractors and for which Corp contends the Subcontractors are responsible to Corp for damages, including without limitation delay damages, as a result of the Subcontractors' respective non-performance and/or breach of their contracts.

Exh 244 p. 2. The contract allows Corp to pass along to Cortinas "any liquidated or actual damages imposed by Owner upon Contractor or otherwise incurred by Contractor as result of Subcontractor's failure to perform or complete the Work within the times herein above provided." Exh. 203 p. 4. Under the contract, Corp may pass along only those liquidated damages that it incurred. Corp was responsible for 179 days of delay for which it paid $626,170 in liquidated damages, making its actual daily liquidated damages rate $3,498.[3] Corp did not incur $3,750 in daily liquidated damages, so under the contract, it cannot pass that amount to Cortinas. We reverse on this ground because substantial evidence does not support a daily liquidated damages rate of $3,750.

---

[2] Cortinas argues that the trial court erred in relying on the settlement agreement because it was self-serving and not subject to a reasonableness hearing. Corp correctly argues that this issue is raised for the first time on appeal and we decline to review it.

[3] Cortinas argues that Corp actually paid an even lower daily rate because liquidated damages were assessed for more than 179 days. But the evidence is conflicting whether Corp paid liquidated damages for delay in excess of 179 days, beyond the certificate of occupancy date. The trial court made a finding resolving credibility determinations in favor of Corp, and Corp's testimony tended to reflect that it paid liquidated damages for 179 days of delay.

Award of Actual Damages and Liquidated Damages

Cortinas argues that the trial court erred in awarding both actual and liquidated damages.

Where there is no reliance on extrinsic evidence, interpretation of a contract is a question of law reviewed de novo. State v. R.J. Reynolds Tobacco Co., 151 Wn. App. 775, 783, 211 P.3d 448 (2009). We attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005).

The trial court awarded damages based on Corp and Cortinas' contract, which states:

> In the event that the Subcontractor shall fail in the performance of the entire work to be performed under this contract, by and at the time or times herein mentioned or referred to, Subcontractor shall pay Contractor liquidated damages, per plans and specifications per day, in view of the difficulty of estimating such damages with exactness, is hereby expressed, fixed, computed, determined and agreed upon as the damages which will be suffered by the Contractor by reason of such default; and it is understood and agreed upon by the parties of this contract that the liquidated damages herein before mentioned are in lieu of the actual damages arising from such breach of this contract, which said sum the said Contractor shall have the right to deduct from any monies otherwise due or to become due to the said Subcontractor, or to sue for and recover compensation or damages for the nonperformance of this contract at the time or times stipulated or provide[d] for. Furthermore, Subcontractor shall be responsible to Contractor for any liquidated or actual damages imposed by Owner upon Contractor or otherwise incurred by Contractor as result of Subcontractor's failure to perform or complete the Work within the times herein above provided.

Exh. 203 p. 3-4. The court awarded $48,750 in passed-along liquidated damages pursuant to the last sentence. It awarded $7,116.83 in costs pursuant to the second to last sentence. (Findings of Fact 21, as amended at CP 163).

Cortinas argues that actual damages and liquidated damages cannot be concurrently imposed and cites several cases as authority. Paradise Orchards Gen. P'ship v. Fearing, 122 Wn. App. 507, 94 P.3d 372 (2004); Mahoney v. Tingley, 85 Wn.2d 95, 529 P.2d 1068 (1975). But these cases were matters of contract interpretation and do not stand for the broad rule proposed by Cortinas. The question is whether the contract supports the court's damages award. The trial court properly awarded passed-along liquidated damages pursuant to the last sentence permitting such damages. The second to last sentence supports the award of costs, stating that the subcontractor pays the contractor liquidated damages fixed as those suffered by the contractor as a result of default. Thus, the contract allows Corp to collect losses suffered as a result of thirteen days of delay, including project supervision, extended housing costs, and extended insurance.

We affirm the award of costs resulting from delay in addition to passed-along liquidated damages.

Attorney fees at Trial

Cortinas argues that the trial court erred in denying its motion for fees under RCW 39.08.030. We review a discretionary award of attorney fees for an abuse of discretion. In re Guardianship of Decker, 188 Wn. App. 429, 439, 353 P.3d 669, rev. denied, 184 Wn.2d 101, 360 P.3d 818 (2015)). RCW 39.08.030(b) allows a bond claimant to recover "attorneys' fees in such sum as the court

12

adjudges reasonable. . . ." But only a prevailing bond claimant may recover under the statutes. See Diamaco, Inc. v. Mettler, 135 Wn. App. 572, 578, 145 P.3d 399 (2006); 3A Indus., Inc. v. Turner Const. Co., 71 Wn. App. 407, 419 n.3, 869 P.2d 65 (1993); Sime Const. Co., Inc. v. Wash. Pub. Power Supply Sys., 28 Wn. App. 10, 17, 621 P.2d 1299 (1980). Here, Cortinas' claim under the bond was never in dispute and was stipulated to by the parties. The only issue was whether the amount should be set off against Corp's claims should it prevail. On that issue Cortinas was not the prevailing party and thus, was not entitled to an award of attorney fees. But even if Cortinas was so entitled, there was no abuse of discretion in declining to make such an award. Because Cortinas' claim was undisputed at trial, little, if any of its fees were incurred in pursuit of it. The trial court did not abuse its discretion when it denied Cortinas' request,

## Evidentiary Rulings

We review the trial court's evidentiary rulings for abuse of discretion. Univ. of Wash. Med. Ctr. v. Dep't of Health, 164 Wn.2d 95, 104, 187 P.3d 243 (2008). A trial court abuses its discretion when its ruling is based on untenable grounds or untenable reasons. Medcalf v. Dep't of Licensing, 83 Wn. App. 8, 16, 920 P.2d 228 (1996).

## Evidence of other delays

Cortinas argues that the trial court abused its discretion by excluding evidence of alleged concurrent delays. Cortinas objects to the exclusion of evidence that Corp made a change order request for extra work from April 23 to July 24, 2014. Cortinas also objects to the exclusion of evidence of other City caused delays from the summer of 2014.

13

The trial court excluded evidence of delays outside the time period of Cortinas' delays: December 2014 to April 2015. The trial court explained that the relevance of such delays is limited, and outweighed by unfair prejudice. Concurrent delays must be related by circumstance even if they need not exactly overlap. Cortinas failed to explain how these other delays were related by circumstance to its own alleged delays. Thus, Cortinas does not show how this disputed evidence is relevant. Absent a showing that the other delays were related by circumstance, the trial court did not abuse its discretion by excluding evidence of delays outside the time period of December 2014 to April 2015.

Cortinas also objects to the exclusion of Exh. 147, Corp's unfiled, unverified complaint against the City, which alleged numerous City caused delays. We agree with the trial court's conclusion that the unfiled document is not probative. Corp's creation of a document asserting City-caused delays does not prove that they occurred. In addition, Corp offered no explanation for how these alleged delays were connected to Cortinas' work, and therefore concurrent. The trial court did not abuse its discretion by excluding this pleading.

Evidence disputing critical path delays

Cortinas argues that the trial court erred by excluding evidence disputing Corp's critical path analysis. First, Cortinas argues that the trial court erred by sustaining Corp's objection to the question, "[w]hat trade was working out on the project in the last 13 days who shouldn't have been there but was there because Cortinas delayed on the baseboards?" VRP at 380. It is undisputed that the project was delayed by more than 13 days. The trial court did not abuse its

14

discretion in declining to allow questions about the tail end of the project because Cortinas' work had no immediate impact on the end of the project.

Second, Cortinas argues that the trial court erred in excluding Corp's original, baseline project schedule (exhibit 148), and an attempted, incomplete critical path schedule by French (exhibit 149). The trial court reasoned that these schedules were not relevant, risked unfair prejudice, and lacked foundation. Exhibit 148 was an original baseline schedule created in January 2013 and is not relevant because it was not used for a critical path analysis. To the extent that the original baseline schedule is relevant, the trial court was correct that it would cause confusion and unfair prejudice. Exhibit 149 was an as-built schedule that was a "work in progress" that was "missing lots of dates." VRP at 375. French, who spent only an hour or two on the schedule, did not consider it helpful for any purpose. The trial court was correct that the incomplete schedule was minimally probative and confusing. The trial court did not abuse its discretion in excluding these two exhibits.

Evidence of pre-December 2014 delays

Cortinas identifies a number of instances in which the trial court excluded testimony about delays to the project before December 2014. Cortinas contends that the deviation from the original schedule made it difficult to complete its work in a timely manner. But the subcontract contemplated deviations from the schedule:

> 15.2 Subcontractor agrees, within five (5) calendar days after being notified by Contractor, to commence the Work at the Project at such points as Contractor may designate, and to continue diligently thereafter in the performance of the Work, and to fully complete all of the Work to the satisfaction of Contractor and

15

> Owner within Contractor's approved schedule, as may from time to time be adjusted.

Exh. 203 p 3. Cortinas does not allege that they were provided less than five days of notice to commence work. Thus, changes in the schedule are not relevant to Cortinas' obligation to complete work in a timely manner. The trial court did not abuse its discretion in excluding evidence of pre-December delays.

We affirm the challenged evidentiary rulings.

Telephonic Testimony

Cortinas argues that the trial court erred when it did not allow a witness to testify telephonically. We review a trial court's decisions admitting or excluding evidence for abuse of discretion. Univ. of Wash. Med. Ctr., 164 Wn.2d at 104.

CR 43 allows telephonic testimony under certain circumstances:

> A witness may testify telephonically under limited circumstances.

> In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise directed by the court or provided by rule or statute. For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.

CR 43(a)(1). "[G]ood cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident or illness, but remains able to testify from a different place." In re Marriage of Swaka, 179 Wn. App. 549, 554, 319 P.3d 69 (2014) (quoting Federal Rules of Civil Procedure (FRCP) 43 Advisory Committee's Note to 1996 amendments as quoted in Washington State Register 10–05–090 (2010)). In addition to good cause, the court may approve telephonic testimony with appropriate safeguards in place:

> [s]afeguards must be adopted that ensure accurate identification of the witness and that protect against influence by persons present with the witness. Accurate transmission likewise must be assured.
> Other safeguards should be employed to ensure that advance notice is given to all parties of foreseeable circumstances that may lead the proponent to offer testimony by transmission. Advance notice is important...

WSR 10–05–090.

At trial, Cortinas explained that there was good cause and compelling circumstances for telephonic testimony because the witness lived in Oregon and was the sole caregiver for her disabled daughter and two young grandchildren. Cortinas offered that it would question the witness about delays, including an exhibit that had not been listed as a proposed exhibit by either party. Cortinas explained that it would email the necessary exhibits to the witness prior to her testimony. Corp expressed concern about cross examining a witness about exhibits that it could not present to her.

After recessing to review CR 43(a)(1), the trial court found good cause, but a lack of adequate safeguards. The court was suspicious of Cortinas' recently disclosed exhibit, and was concerned that the taking of testimony with exhibits had been "extremely cumbersome" throughout trial. VRP at 543. The court was reasonably concerned about the reliability of the testimony, which it would be in an inferior position to assess telephonically. Ensuring proper management of exhibits presented to the witness is within the scope of appropriate safeguards required by CR 43(a)(1). We affirm the trial court's exercise of discretion to exclude telephonic testimony.

Motion to Exclude

Cortinas argues that the trial court erred when it did not exclude French from the courtroom. We review the court's ruling to exclude witnesses from the courtroom for abuse of discretion. See State v. Njonge, 181 Wn.2d 546, 559-560, 334 P.3d 1068 (2014). It is within the discretion of the trial court to exclude witnesses, except for party representatives.

> At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be reasonably necessary to the presentation of the party's cause.

ER 615. French, project manager for Corp, and Don Annotti, owner of Corp, were designated as the representatives of either Travelers or Corp, who were the two defendants. Both were permitted to remain in the courtroom throughout trial. Cortinas correctly argues that neither French nor Annotti are employees of Travelers, so both cannot be exempted from exclusion under ER 615(2).

Even so, the court also considered that Cortinas had two representatives and appeared to consider as a matter of fairness that Corp also have two representatives. Because the trial court has broad discretion under the rule, it was not an abuse of that discretion to decide the issue on that basis. In addition, while Cortinas argues that French had the opportunity to fabricate his testimony after hearing the testimony of Annotti, Brandi Gray, and Willie Cortinas, he offers no evidence in support of this contention.

The trial court did not abuse its discretion denying Cortinas' motion to exclude French.

Fees and Costs on Appeal

Cortinas requests attorney fees on appeal pursuant to RCW 39.08.030(1)(b). But because Cortinas does not substantially prevail on appeal, we deny the request. In addition because Cortinas' claim was undisputed at trial, an award of attorney fees is not reasonable under the circumstances.

Corp requests costs on appeal. Upon submission of a cost bill, we award Corp its costs under RAP 14.2.

Reverse in part and affirm in part.

_Spearman, J._

WE CONCUR:

_Cox, J_