IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| POWERCOM, INC., a Washington corporation, | No. 85120-9-I |
| Appellant, | DIVISION ONE |
| v. | |
| VALLEY ELECTRIC CO. OF MT. VERNON, INC., a Washington corporation; ARGONAUT INSURANCE COMPANY, a foreign insurer (Bond No. SUR0043723-00); CLARK CONSTRUCTION GROUP, LLC, a foreign limited liability company; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a foreign insurer; FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a foreign insurer; FEDERAL INSURANCE COMPANY, a foreign insurer, and ZURICH AMERICAN INSURANCE CO., a foreign insurer (Bond Nos. 106308203/ 82298673/09190971 and Bond Nos. 106356881/82298695/09207256); and PORT OF SEATTLE, a Washington State municipal corporation, | PUBLISHED OPINION |
| Respondents. | |

BOWMAN, J. — PowerCom Inc., a subcontractor on a renovation project at the Seattle-Tacoma International Airport, appeals the trial court's stay of its pass-through claims against the Port of Seattle (Port), its prime contractor Clark Construction Group LLC (Clark), and their sureties pending the final resolution of Clark's lawsuit against the Port. PowerCom argues the trial court's stay violated

its right to sue under chapter 39.08 RCW, Washington's "Little Miller Act."

Because the plain language of PowerCom's subcontract explicitly waives its right

to sue under the Little Miller Act pending resolution of pass-through claims, we

affirm.

FACTS

In 2015, the Port hired Clark to renovate the "International Arrivals Facility

South Satellite Corridor" at Seattle-Tacoma International Airport.  The Port and

Clark executed a design-build contract under which Clark was the prime

contractor (Main Contract).  In 2017, Clark executed a subcontract with Valley

Electric Co. of Mt. Vernon Inc. (Valley) to install electric security, surveillance,

and monitoring systems.  And in 2018, Valley subcontracted with PowerCom to

provide, install, and test certain electrical cables within Valley's scope of work.[1]

All three contracts contain dispute resolution provisions.  The Main

Contract has a multistep dispute resolution process.  First, the Port and Clark

must meet to try to resolve any claims.  If they do not resolve their dispute, they

must submit the claim to a dispute resolution board.  If they still cannot resolve

their claim, the Port and Clark must mediate the claim under the voluntary

construction mediation rules of the American Arbitration Association.  And finally,

having exhausted those avenues, the Port or Clark may file a lawsuit to resolve

the claim.

---

[1] Clark and Valley each posted bonds with surety companies to ensure payment to laborers, subcontractors, and material suppliers as required for public works contracts under RCW 39.08.010.

The Main Contract applies to claims not only between the Port and Clark but also to claims Clark "assert[s] on behalf of [a] Subcontractor, Sub-subcontractor, or Supplier." Claims asserted by Clark for subcontractors are called "pass-through claims." The contract between Clark and Valley incorporates the dispute resolution procedures of the Main Contract for any pass-through claims but authorizes arbitration of non-pass-through claims "at Clark's sole option."

The subcontract between Valley and PowerCom provides different processes for dispute resolution depending on the type of claim. For all pass-through claims, the contract binds PowerCom to "the procedure and final determination as specified in the Main Contract." And PowerCom agreed that

> it will not take, or will suspend, any other action or actions with respect to any such claims and will pursue no independent litigation with respect thereto, pending final determination of any dispute resolution procedure between [the Port] and [Clark].

All other claims—that is, non-pass-through claims—"shall be decided by arbitration."[2]

PowerCom began its electrical work in late 2018, but between March 2020 and October 2021, it experienced delays because of the COVID-19[3] protocols that the Port, Clark, and Valley implemented at the project site. In October 2021, PowerCom submitted a pass-through claim to Valley, seeking payment of

---

[2] For non-pass-through claims, the contract also requires the parties to attend at least four hours of mediation before arbitration. And if PowerCom's subcontract and the Main Contract conflict, PowerCom's subcontract controls.

[3] Coronavirus disease 2019.

$1,306,250 for its total increased costs from the COVID-19 restrictions.[4] Valley passed PowerCom's and their own COVID-19-related claims to Clark. Clark then submitted both claims along with its own COVID-19-related claims to the Port.

The Port disputed the claims, so the Port and Clark engaged in the dispute resolution process described in the Main Contract. That process failed to resolve the claims. So, in December 2022, Clark sued the Port for recovery of its, Valley's, and PowerCom's losses.

On October 19, 2022, PowerCom sued the Port, Clark and its sureties, and Valley and its sureties, seeking compensation for its COVID-19-related costs and costs associated with its non-pass-through claims. It asserted claims of breach of contract; breach of the covenant of good faith and fair dealing; violation of the Prompt Payment Act, chapter 39.76 RCW; unjust enrichment; and payment for its "account stated." PowerCom also sought foreclosure on Clark's and Valley's sureties' bonds under the Little Miller Act.

In January 2023, PowerCom moved to compel arbitration of its claims against all parties. PowerCom argued that the arbitration clause in its subcontract applies to both pass-through and non-pass-through claims and asked that the claims be arbitrated together. It also asked for a stay pending that arbitration. Clark agreed to stay and arbitrate PowerCom's non-pass-through claims. But it argued that the trial court should stay PowerCom's COVID-19-related claim pending resolution of its lawsuit against the Port.

---

[4] PowerCom also submitted non-pass-through claims to Valley for extra work and unpaid change orders. In total, PowerCom sought a judgment of $2,643,330 plus sales tax and prejudgment interest.

The court granted PowerCom's motion to compel arbitration for its non-pass-through claims against Clark but denied it as to the pass-through claims. The court stayed PowerCom's COVID-19-related claim "pending resolution of Clark's lawsuit against [the] Port" because that "lawsuit includes [PowerCom]'s pass-through COVID-19 claim."

PowerCom appeals.[5]

ANALYSIS

PowerCom argues the court erred by staying its pass-through COVID-19-related claim "pending resolution of Clark's lawsuit against [the] Port." According to PowerCom, the court's stay "indefinitely postponed" its ability to recover payment on its claim in violation of the Little Miller Act. Clark argues that PowerCom contractually waived by " 'clear and explicit' language" its right to recover under the Little Miller Act pending resolution of Clark's lawsuit against the Port.[6] We agree with Clark.

A trial court has inherent power to stay its proceedings where the interest of justice so requires. King v. Olympic Pipeline Co., 104 Wn. App. 338, 350, 16 P.3d 45 (2000). We review a trial court's stay of proceedings for an abuse of discretion. Id. at 348. A trial court abuses its discretion if its ruling is manifestly

---

[5] The Port and Clark filed response briefs to PowerCom's appeal. We issued a letter instructing Valley to also file a response brief. Valley responded, joining the Port and Clark's arguments. PowerCom moved to strike Valley's joinder, arguing that it "attempts to raise new issues and arguments for the first time on appeal" and that it is "not [a] respondent[ ] or necessary part[y] to PowerCom's appeal under RAP 5.3(i)." We deny PowerCom's motion to strike Valley's response, which was submitted at the direction of this court and raised no new issues.

[6] PowerCom argues that we should refuse to consider Clark's waiver argument because it did not argue the theory below. But the record shows that Clark did argue below that PowerCom waived its right to sue under the Little Miller Act.

unreasonable or based on untenable grounds or reasons. Id. A court's decision is manifestly unreasonable if, despite applying the correct legal standard to the supported facts, the court adopts a view that no reasonable person would take. Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006). A trial court bases its decision on untenable grounds or untenable reasons if it relies on unsupported facts or applies the wrong legal standard. Id.

Washington's Little Miller Act requires contractors to obtain bonds on public works projects. 3A Indus., Inc. v. Turner Constr. Co., 71 Wn. App. 407, 411, 869 P.2d 65 (1993); RCW 39.08.010. The act is intended to " 'provide security for those who furnish labor and material in the performance of government contracts' " where liens are unavailable. Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Constr. Co., 176 Wn.2d 502, 523-24, 296 P.3d 821 (2013) (quoting Fanderlik-Locke Co. v. United States ex rel. Morgan, 285 F.2d 939, 942 (10th Cir. 1960)). The Little Miller Act also provides subcontractors "a right of action in their own name against the bond for work done or materials or goods furnished in the project." 3A Indus., 71 Wn. App. at 411; RCW 39.08.030(1)(a).[7]

A subcontractor may waive its right to sue under the Little Miller Act. H. W. Caldwell & Son, Inc. v. United States ex rel. John H. Moon & Sons, Inc., 407

---

[7] Washington's Little Miller Act is similar to the federal "Miller Act," 40 U.S.C. §§ 3131 to 3134. The Miller Act provides security for subcontractors who furnish labor and material under government contracts by requiring prime contractors to secure a payment bond. 40 U.S.C. § 3131. It then grants a civil right of action to those subcontractors to recover unpaid labor or material costs from the payment bond. 40 U.S.C. § 3133. Because the Little Miller Act generally parallels the federal Miller Act, Washington courts rely on Miller Act cases to interpret the Little Miller Act. See 3A Indus., 71 Wn. App. at 411, 418.

F.2d 21, 23 (5th Cir. 1969); see 3A Indus., 71 Wn. App. at 411, 418-19 (language of subcontract bound subcontractor to arbitration at contractor's demand despite its right to sue under the Little Miller Act). But courts do not favor finding that a subcontractor has contractually abandoned its rights under the Little Miller Act. H. W. Caldwell, 407 F.2d at 23; see 3A Indus., 71 Wn. App. at 418 (vague references to dispute resolution processes are not enough to waive a subcontractor's right to sue under the Little Miller Act); see also United States ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc., 290 F.3d 1199, 1205 (9th Cir. 2002) (courts liberally construe the Miller Act " 'to effectuate the Congressional intent to protect those whose labor and materials go into public projects' ") (quoting United States ex rel. Sherman v. Carter, 353 U.S. 210, 216, 77 S. Ct. 793, 1 L. Ed. 2d 776 (1957)). A subcontractor waives its right to sue under the Little Miller Act only where a subcontract explicitly contains such a waiver. H. W. Caldwell, 407 F.2d at 23; see 3A Indus., 71 Wn. App. at 418-19 (subcontractor's "explicit agreement" to arbitration bound it to that remedy). The waiver must be " 'manifest by [the] plain language' of the contract." 3A Indus., 71 Wn. App. at 413[8] (quoting Fanderlik-Locke, 285 F.2d at 943).

Citing Fanderlik-Locke, PowerCom argues it did not explicitly waive its right to sue under the Little Miller Act. In that case, a subcontractor sued the prime contractor and the bondsman under the federal Miller Act for the value of labor performed and materials installed beyond that provided for in the subcontract. Fanderlik-Locke, 285 F.2d at 941. The prime contractor argued the

---

[8] Internal quotation marks omitted.

subcontractor could not sue until it followed an exhaustive dispute resolution process provided in the prime contract that was incorporated by reference in the subcontract. Id. at 941-42. The subcontract provided that the subcontractor was bound to the contractor by the " 'general conditions' " of the prime contract, but it did not specifically reference the settlement of disputes or the subcontractor's right to sue under the Miller Act. Id. The court determined that the language did not amount to an explicit waiver of the subcontractor's right to sue under the Miller Act. Id. at 943.

This case is different than Fanderlik-Locke. PowerCom's contract does more than just incorporate by reference a dispute resolution process in the Main Contract. It notifies PowerCom that its claims against the Port will pass through to Clark to be resolved with the Port on its behalf. And it states that for those pass-through claims, PowerCom is "bound by the procedure and final determination as specified in the Main Contract." Finally, the plain language of PowerCom's contract states that it will surrender its right to independently sue for recovery of those claims pending resolution of any dispute between Clark and the Port:

> [PowerCom] agrees that it will not take, or will suspend, any other action or actions with respect to any such claims and will pursue no independent litigation with respect thereto, pending final determination of any dispute resolution procedure between [the Port] and [Clark].

This language explicitly manifests PowerCom's agreement to relinquish the right to resolve pass-through claims in the first instance to Clark and to pursue no independent litigation until that process is complete.

PowerCom argues the language in its contract does not amount to an explicit waiver of its right to immediately sue under the Little Miller Act because it does not specifically reference that act. But the language says PowerCom relinquishes its right to sue or pursue any independent litigation for pass-through claims pending resolution of "any dispute" between Clark and the Port. This unambiguous language clearly includes claims under the Little Miller Act.

Indeed, federal courts have concluded that similar language amounts to a waiver of a subcontractor's Miller Act rights. For example, in United States for Use and Benefit of Trans Costal Roofing Co. v. David Boland, Inc., 922 F. Supp. 597, 598 (S.D. Fla. 1996),[9] aff'd, 226 F.3d 646 (11th Cir. 2000), the court held that a subcontractor waived its right to a Miller Act remedy where the subcontract provided that

> the "[s]ubcontractor shall first pursue and fully exhaust [the procedures set forth in the standard disputes clause of the primary contract] before commencing any other action against Contractor for any claims it may have arising out of its performance of the Work herein."

The court determined that the language "clearly encompasses both the Miller Act and common law claims." Id.; see also United States ex rel. R. Rudnick & Co. v. Daniel, Urbahn, Seelye & Fuller, 357 F. Supp. 853, 860-62 (N.D. Ill. 1973)[10] (language in a subcontract that " 'any dispute concerning a question of fact arising under this Subcontract which is not disposed of by agreement shall be decided by [an alternative dispute process]' " bars suit under the Miller Act).

---

[9] Emphasis added; alterations in original.

[10] Emphasis added.

9

The language in PowerCom's subcontract consists of a waiver of its right to sue under the Little Miller Act pending a final determination of Clark's pass-through claims against the Port.  The trial court did not abuse its discretion by staying PowerCom's pass-through COVID-19-related claim.[11]

We affirm.

Brennan, J

WE CONCUR:

Díaz, J.

Smith, C.J.

---

[11] Because we conclude PowerCom waived its right to sue under the Little Miller Act as to its pass-through claim pending resolution of the lawsuit between Clark and the Port, we do not reach PowerCom's argument that the trial court erred by refusing to compel arbitration on that claim.